**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

LISA COLE, ASHLEY JOHNSON, MISTY GREBEL, ALEXIS BRIMHALL, KAYLA SLACHTA, and JILL REISINGER, on their own behalf and on behalf of others similarly situated,

*Plaintiffs*,

v.

ULTA SALON, COSMETICS & FRAGRANCE, INC.,

*Defendant*.

Case No. 1:25-cv-02521-RLY-MJD

**DEFENDANT'S BRIEF IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS


INTRODUCTION ........ 1

ARGUMENT ........ 2

I. Plaintiffs' Complaint Fails to Allege More Than Conclusions and Should Be Dismissed Under Rule 8. ........ 2

II. Plaintiffs' Complaint Fails to State a Claim for IDCEMA Violations and Should Be Dismissed Under Rule 12(b)(6). ........ 3

A. Plaintiffs Fail to Allege That Ulta Knew or Had Reason to Know It Sent Commercial Emails to an Indiana Resident. ........ 4

B. Plaintiffs Fail to Allege Any Subject Line Contained False or Misleading Information. ........ 5

C. Plaintiffs' Reliance on FTC Guidelines Cannot Save Their IDCEMA Claims. ........ 6

III. CAN-SPAM Preempts IDCEMA, Requiring Dismissal of the Complaint Under Rule 12(b)(6). ........ 8

A. CAN-SPAM's Express Preemption Forecloses Plaintiffs' IDCEMA Claims. ........ 10

1. CAN-SPAM Expressly Preempts IDCEMA. ........ 10

2. CAN-SPAM's Narrow Express Preemption Exception Does Not Apply to Plaintiffs' IDCEMA Claims. ........ 11

i. The IDCEMA Claims Plaintiffs Assert Are Not Grounded in Traditional Tort Principles. ........ 12

ii. Plaintiffs Have Not Pled the Elements of a Claim Sounding in Tort. ........ 14

iii. Plaintiffs Cannot Meet Rule 9(b) Pleading Standards That Apply to Fraud Claims. ........ 16

B. Conflict Preemption Bars Plaintiffs' IDCEMA Claim. ........ 17

IV. IDCEMA Is Unconstitutional Under the Dormant Commerce Clause. ........ 19

CONCLUSION ........ 21

## INTRODUCTION

Like many retailers, Ulta Salon, Cosmetics & Fragrance, Inc. ("Ulta") emails discount offers and coupons to its customers. These promotions often highlight sales and special offers in the email subject lines. In their Complaint, Dkt. No. 1-2 (the "Complaint"), named plaintiffs Lisa Cole, Ashley Johnson, Misty Grebel, Alexis Brimhall, Kayla Slachta, and Jill Reisinger ("Plaintiffs") allege Ulta's commonplace marketing practices—email subject lines referencing "free gifts" or "percentage discounts" associated with certain promotions—are false or misleading in violation of the Indiana Deceptive Commercial Electronic Mail statute ("IDCEMA"). Ind. Code § 24-5-22-1 *et seq.*

Plaintiffs' Complaint fails for four independently dispositive reasons.

*First*, Plaintiffs' sparse allegations about their own experiences fail to meet even Rule 8 pleading requirements. Rather than allege concrete facts, Plaintiffs merely recite the IDCEMA elements and offer conclusory allegations of purported violations, asserting that "discovery will show" more detail for their claims. *See* D/N 1-2, ¶¶ 232, 234, 239, 246. Such threadbare allegations fall far short of Rule 8's requirements.

*Second*, Plaintiffs have not pleaded the elements of their IDCEMA claims, and the claims thus fail to state a claim under Rule 12(b)(6).

*Third*, Plaintiffs' IDCEMA claims also fail because they are preempted by the federal Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM"), 15 U.S.C. §§ 7701–13. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1061–64 (9th Cir. 2009); *Martin v. CCH, Inc.*, 784 F. Supp. 2d 1000, 1005–08 (N.D. Ill. 2011). Enacted shortly after IDCEMA, and in response to state statutes like it, CAN-SPAM expressly preempts state laws like IDCEMA that regulate commercial emails. And because IDCEMA conflicts with CAN-SPAM, conflict preemption also bars Plaintiffs' IDCEMA claims.

*Fourth*, IDCEMA is facially invalid because it violates the dormant Commerce Clause by regulating commerce beyond Indiana and burdening interstate commerce.

For these reasons, Plaintiffs' Complaint fails and should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiffs' Complaint Fails to Allege More Than Conclusions and Should Be Dismissed Under Rule 8.

Plaintiffs' sparse and conclusory allegations about their own experiences in the Complaint do not meet Rule 8's basic pleading requirements. To determine whether Rule 8 is satisfied, courts look to the elements of the asserted claim as defined by statute or precedent. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *see also United States ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison, Indiana, Inc.*, 305 F. Supp. 3d 964, 975 n.2 (S.D. Ind. 2018). Plaintiffs must meet that standard *before discovery*; Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79; *see also Wertymer v. Walmart, Inc.*, 142 F.4th 491, 503 (7th Cir. 2025) ("Our pleading standards are not rigorous, but as we have now noted several times, they do require more than conjecture.") (citing *Iqbal*, 556 U.S. at 678–79).

Here, Plaintiffs do not sufficiently connect the conduct alleged in the Complaint to their own experiences. Plaintiffs' Complaint lists pages of email subject lines that Ulta allegedly sent to "Named Plaintiffs and Class members" that reference a "free gift," D/N 1-2, ¶¶ 32–198, or a "percentage discount," *id.* ¶¶ 211–21. But Plaintiffs never actually allege concrete facts tying any subject line to a real-world deception, reliance, or other injury purportedly suffered by a named Plaintiff. For example, Plaintiffs fail to (and cannot) allege that the emails they list concealed qualifying conditions for a free gift or percentage discount or that Ulta failed to honor disclosed terms. *Id.* ¶¶ 199–201, 223–25. Instead, the Complaint substitutes legal conclusions for facts and

repeats generalized assertions that the offending subject lines induce greater engagement. That is not enough to state a claim. Complaints that rest on unsupported legal allegations and generalized assertions are insufficient and must be dismissed. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014) (finding that "[e]ven under Rule 8(a), 'naked assertions devoid of further factual enhancement' are insufficient to support a claim") (quoting *Iqbal*, 556 U.S. at 678).

Plaintiffs repeatedly attempt to allege that, once the doors of discovery are unlocked, they will somehow be able to remedy their pleading deficiencies. *See* D/N 1-2, ¶¶ 232, 234, 239, 246. But Plaintiffs cannot substitute speculation about what discovery may show for concrete, factual allegations. *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) (dismissing plaintiffs' complaint prior to discovery because a "complaint itself must contain sufficient factual detail . . . before discovery may commence").

By alleging that Ulta violated IDCEMA with little else to support their claims, Plaintiffs do nothing more than make "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" prohibited by Rule 8(a)(2) because they leave Ulta guessing at Plaintiffs' precise experiences. *Iqbal*, 556 U.S. at 678. This alone is sufficient to warrant dismissal of Plaintiffs' claims because under Rule 8(a), a plaintiff must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 555–56, 559, 570 (2007) (quotation omitted). Here, Plaintiffs fail to provide Ulta with adequate notice of the bases of their claims. Without more, Plaintiffs cannot "unlock the doors of discovery" and proceed past a motion to dismiss. *Iqbal*, 556 U.S. at 678. For these reasons, Plaintiffs' Complaint should be dismissed with prejudice.

## II. Plaintiffs' Complaint Fails to State a Claim for IDCEMA Violations and Should Be Dismissed Under Rule 12(b)(6).

As demonstrated below, Plaintiffs fail to state a claim upon which relief can be granted

because they fail to plead the required elements of their IDCEMA claims. Fed. R. Civ. P. 12(b)(6). To state an IDCEMA claim, Plaintiffs must demonstrate that Ulta initiated, or assisted with the transmission of, a commercial email that: (i) "the sender knows, or has reason to know [] is held by a resident of Indiana"; and (ii) contained "false or misleading information in the subject line." Ind. Code § 24-5-22-7. Here, Plaintiffs do not meet this standard as to either IDCEMA element. Plaintiffs' threadbare factual allegations and citations to Federal Trade Commission ("FTC") guidelines are not enough to save Plaintiffs' IDCEMA claims from dismissal. As a result, Plaintiffs' Complaint should be dismissed.

### A. Plaintiffs Fail to Allege That Ulta Knew or Had Reason to Know It Sent Commercial Emails to an Indiana Resident.

As to the first IDCEMA element, Plaintiffs hypothesize about how Ulta *potentially* knows that a consumer is an Indiana resident, but they say nothing about how Ulta actually knew or had reason to know that any named Plaintiff was an Indiana resident. D/N 1-2, ¶¶ 227–35 (speculating that the volume of Ulta's emails *could* touch Indiana residents and generically hypothesizing ways Ulta could "know[] where many of its customers reside through several methods," without providing any concrete allegations as to Plaintiffs or putative class members). Plaintiffs' theories as to how Ulta knows, or has reason to know, that named Plaintiffs' email addresses are held by Indiana residents is just conjecture, not a factual basis for a plausible claim. *Id.* ¶ 227. Such speculation is insufficient. *See Wertymer*, 142 F.4th at 503; *see also Martin*, 784 F. Supp. 2d at 1007–08 (finding plaintiff failed to sufficiently allege facts showing defendant tracked plaintiff's online activity under an analogous Illinois CEMA statute where plaintiff included only speculation about defendant's knowledge). Moreover, Plaintiffs cannot substitute their hopes that "discovery will show" factual support for this first element for actual allegations sufficient to meet their

pleading burden. D/N 1-2. ¶¶ 232, 234, 239, 246. Accordingly, Plaintiffs fail to plead the essential IDCEMA element of knowledge about Indiana residency.

### B. Plaintiffs Fail to Allege Any Subject Line Contained False or Misleading Information.

Plaintiffs also fail to allege sufficiently IDCEMA's second element—that Ulta sent emails containing subject lines with any false or misleading information. Ind. Code § 24-5-22-7(b)(3). Plaintiffs' apparent theory is that the subject lines of certain Ulta promotional "free gift" or "percentage discount" emails were false or misleading because the subject lines did not also recite every minimum purchase threshold or other condition that applied to the promotion. D/N 1-2, ¶¶ 200–03, 223–26. But none of the information contained in these subject lines is alleged to be "false or misleading." Plaintiffs *never allege* that Ulta failed to offer the gifts or percentage discounts referenced in the subject lines they attack, that qualifying conditions were concealed, or that any gift or discount was unavailable on its stated terms.

Plaintiffs' other allegations underscore this deficiency. Plaintiffs allege Ulta "understands how to restrict an offer in the subject line of an email" and that "from time to time" Ulta sends "free gift" offers "without the need to make a purchase." *Id.* ¶¶ 204, 208. Plaintiffs allege that "throughout the year, Class Members receive[d] an email with a subject line that states: '[Name], your FREE bday gift is inside + 2X points [heart emoji.]'" *Id.* ¶ 209. Plaintiffs assert this sample subject line was not deceptive because "Class members can receive this annual 'FREE bday gift' by showing a barcode in store." *Id.* ¶ 210. This acknowledgement undoes Plaintiffs' claims. This "FREE bday gift" email—just like the other email subject lines Plaintiffs complain about—is subject to conditions not spelled out in the subject line. By Plaintiffs' own telling, the free gift is not literally "inside" the email; recipients need to go to an Ulta store and present their barcode in order to receive the gift, in the same way they would need to fulfill any (unspecified) conditions

for the other "free gift" and "percentage discount" emails Plaintiffs allege ***were*** false or misleading. Logic does not allow this distinction. Either consumers understand that a "free" gift referenced in a subject line will have some terms or conditions (like additional purchases, or a trip to an Ulta store) attached to it for all emails, or—implausibly—they are misled when those terms and conditions are not completely spelled out in any subject line—regardless of whether the condition is an additional purchase or bringing a bar code to an Ulta store.

Plaintiffs also do not allege that Ulta failed to honor any advertised offer on the terms disclosed in the bodies of emails, or that any named Plaintiff or putative class member was denied a gift or percentage discount upon satisfying disclosed conditions. As a result, Plaintiffs have not identified any false or misleading information in the subject lines of Ulta's emails, and their IDCEMA claims fails.

### C. Plaintiffs' Reliance on FTC Guidelines Cannot Save Their IDCEMA Claims.

Plaintiffs suggest inapplicable FTC guidelines that address the use of the term "free" and "bargain advertising" in promotional materials support their theory that Ulta's email subject lines are false or misleading. 16 C.F.R. §§ 251.1, 233.1 (2025); D/N 1-2, ¶¶ 6, 9–11. Plaintiffs posit that FTC guidelines at 16 C.F.R. § 251.1(b), 16 C.F.R. § 251.1(c), and 16 C.F.R. § 233.1 support their theory that failure to list all possible terms and conditions in an email subject line could create "a reasonable probability of misunderstanding" and mislead recipients as to the terms of the exclusions. *Id.* ¶¶ 6, 9. But, like their comparison to the "FREE bday gift" subject line, these three sections of the FTC guidelines undermine, rather than support, Plaintiffs' theory. *First*, Section 251.1(a) explicitly recognizes the legitimacy of "free gift" offers. 16 C.F.R. § 251.1(a). *Second*, Section 251.1(b)(1) specifically states that "free gift" offers are understood by the average consumer to require another purchase or offer, and therefore, these offers are not false or misleading. *Id.* § 251.1(b). *Third*, Section 251.1(c) requires that retailers list the terms and

conditions at the outset of an offer (i.e., in close conjunction to the "free" gift offers) in clear and conspicuous language, which Ulta does. *Id.* § 251.1(c). And, *fourth*, Section 233.1 is largely unrelated to the allegations Plaintiffs make here. *Id.* § 233.1.

The FTC "Free Offer Guide" Plaintiffs cite was originally adopted in 1971, decades prior to the widespread adoption of email. *Id.* § 251.1. At the outset, the guidelines endorse the practice of "free gift" offers: "The offer of 'Free' merchandise or service is a promotional device frequently used to attract customers. Providing such merchandise or service with the purchase of some other article or service has often been found to be a useful and valuable marketing tool." *Id.* § 251.1(a)(1). The guidelines are meant to address the practice of "free" gift offers with the purchase of a "regular" priced item, and they prohibit retailers from artificially raising the prices of the "regular" priced item. *Id.* § 251.1(b). This is not the type of conduct Plaintiffs allege in their Complaint. Nowhere in the text of the guidelines is there a reference to email, much less to the subject lines at the core of Plaintiffs' claims, and Plaintiffs' attempt to argue that these guidelines somehow preclude the promotion of certain "free gifts" in email subject lines is unavailing. Ignoring the obvious inapplicability of the guidelines to email subject lines and their claims, Plaintiffs state that "[u]nder FTC guidelines at 16 C.F.R. § 251.1(b), the term 'free' indicates that the recipient pays nothing for the item ***and no more than the regular price for any required purchase***." D/N 1-2, ¶ 6 (emphasis added). Nothing about Ulta's email offers violates these requirements. Moreover, Section 251.1(b)(1) expressly states that "[t]he public understands that, except in the case of introductory offers in connection with the sale of a product or service . . . , an offer of 'Free' merchandise or service is based upon a regular price for the merchandise or service which must be purchased by consumers in order to avail themselves of that

which is represented to be 'Free.'" Thus, the FTC guidelines directly undermine Plaintiffs' IDCEMA argument that these types of "free gift" offers are false or misleading. *Id.*

Plaintiffs then cite to Section 251.1(c) to assert that Ulta is required to list any potential terms and conditions associated with a promotion ***in the subject line***. D/N 1-2, ¶ 6. But Section 251.1(c)—which was drafted well before the advent of email advertising—says no such thing. It merely states that "the terms, conditions and obligations" of an offer "should appear in close conjunction with the offer of 'Free' merchandise or service" in order to meet the requirement that terms and conditions be listed at the "outset of the offer." *Id.* § 251.1(c). Because the guidelines were written before the advent of email advertising, they do not specifically address what information must be provided in an email subject line versus the email's body, but they certainly do not support Plaintiffs' novel interpretation. Lastly, Plaintiffs invoke 16 C.F.R. § 233.1, which they allege requires that "bargain advertising like percentage-off offers must be genuine and not deceptive; reductions should be from a regular price without undisclosed limitations that undermine the claimed savings." D/N 1-2, ¶ 10. But § 233.1 regulates "former price comparisons" in marketing offers, not the "percentage discounts" category Plaintiffs challenge in the Complaint. *Id.* at ¶ 9. Plaintiffs' references to FTC guidance in no way support their claims.

Because the Complaint does not plausibly allege that any of the subject lines contained in the Complaint are false or misleading, Plaintiffs' IDCEMA claims fail as a matter of law and should be dismissed with prejudice under Rule 12(b)(6).

## III. CAN-SPAM Preempts IDCEMA, Requiring Dismissal of the Complaint Under Rule 12(b)(6).

CAN-SPAM preempts IDCEMA as Plaintiffs seek to apply it here. *See Martin*, 784 F. Supp. 2d at 1005–08; *see also Virtumundo*, 575 F.3d at 1063–64. The Supremacy Clause

of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Under the Supremacy Clause, CAN-SPAM preempts IDCEMA. As enacted, IDCEMA broadly prohibited sending, conspiring to send, or assisting in the transmission of a commercial email "that . . . contains false or misleading information in the subject line . . . to an electronic mail address that the sender knows, or has reason to know[] is held by a resident of Indiana." Ind. Code § 24-5-22-7.

Very shortly after IDCEMA was enacted, Congress passed CAN-SPAM to establish uniform national standards governing commercial email. Congress was specifically concerned with the patchwork of conflicting state laws regulating commercial emails, like IDCEMA, that existed at the time:

> Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, *since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply.*

15 U.S.C. § 7701(a)(11) (emphasis added).

Like IDCEMA, CAN-SPAM regulates commercial email subject lines. CAN-SPAM specifically prohibits the practice of "purposefully includ[ing] misleading information," 15 U.S.C. § 7701(a)(8), that does not match email contents in subject lines:

> Prohibition of deceptive subject headings. It is unlawful for any person to initiate the transmission . . . of a commercial [email] . . . if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to *mislead* a recipient, acting reasonably under the circumstances, *about a material fact* regarding the contents or subject matter of the message.

15 U.S.C. § 7704(a)(2) (emphasis added). Thus, Congress was focused on commercial emails where a subject line is: (i) "likely to mislead a recipient"; (ii) about "a material fact regarding the

contents or subject matter of the message"; and (iii) where the sender had "actual knowledge, or knowledge fairly implied on the basis of objective circumstances" of this falsity. *Id.* § 7704(a)(2).

### A. CAN-SPAM's Express Preemption Forecloses Plaintiffs' IDCEMA Claims.

To address inconsistencies across state laws, CAN-SPAM expressly preempts state laws governing commercial emails: "This [Act] supersedes any statute . . . of a State . . . that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." *Id.* § 7707(b)(1); *see also English v. Gen. Elec. Co.*, 496 U.S. 72, 78–80 (1990) (analyzing express preemption).

#### 1. CAN-SPAM Expressly Preempts IDCEMA.

Although no Indiana court has analyzed preemption challenges to IDCEMA or has otherwise substantially analyzed claims brought under the statute, the Fourth and Ninth Circuits, along with the Northern District of Illinois in this Circuit, have found that analogous state commercial email spam statutes are expressly preempted by CAN-SPAM, subject to very narrow exceptions not applicable to Plaintiffs' claims. *See Martin*, 784 F. Supp. 2d at 1005–08; *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 353 (4th Cir. 2006); *Virtumundo, Inc.*, 575 F.3d at 1061–64.

The Fourth and Ninth Circuits have recognized that Congress intended CAN-SPAM to "broadly preempt state regulation of commercial e-mail with limited, narrow exception," like the regulation outlined in IDCEMA, and previously found that CAN-SPAM preempted the analogous state statutes. *Virtumundo*, 575 F.3d at 1059–64 (finding CAN-SPAM preempted plaintiff's Washington CEMA claim as to deceptive "from lines" on emails); *Omega*, 469 F.3d at 353; *see also Martin*, 784 F. Supp. 2d at 1004–05.

The Northern District of Illinois came to the same conclusions in *Martin v. CCH, Inc.*, 784 F. Supp. 2d at 1005–08. In that case, the court analyzed claims brought under the Illinois Electronic Mail Act, 815 ILCS § 511/10(a) ("IEMA"), which, like IDCEMA, prohibits emails that contain "false or misleading information in the subject line." *Martin*, 784 F. Supp. 2d at 1005 (citing 815 ILCS § 511/10(a)). There, the court held that the "primary issue [] [wa]s whether the CAN-SPAM Act preempts Plaintiff's state law IEMA claim." *Id.* at 1003. Like IDCEMA, the court noted that "IEMA has been subject to very little interpretation," *id.* at 1005, and so looked to the Fourth and Ninth Circuits' decisions in *Omega World* and *Virtumundo*, respectively, for guidance in concluding that the plaintiff's IEMA claims were preempted by CAN-SPAM. *Id.*; *see also Hafke v. Rossdale Grp., LLC*, No. 1:11-CV-220, 2011 WL 4758768 (W.D. Mich. Oct. 7, 2011) (following the *Martin* court's reasoning to dismiss plaintiff's claims under Michigan's similar statute as preempted by CAN-SPAM).

Here, Plaintiffs' claims under IDCEMA cannot escape preemption for the same reasons. First, IDCEMA, like the Oklahoma CEMA statute in *Omega*, the Washington CEMA statute in *Virtumundo*, and the Illinois CEMA statute in *Martin*, does not prohibit traditionally tortious conduct. As a result, Plaintiffs' claims that Ulta sent subject lines in violation of IDCEMA, D/N 1-2, ¶¶ 254–77, do not fall under the narrow traditional tortious conduct preemption exception to CAN-SPAM recognized by the Fourth and Ninth Circuits. Additionally, Plaintiffs' factual allegations do not independently rise to the level of fraud, such that they could fall into the tortious conduct exception. Thus, Plaintiffs' claims are expressly preempted by CAN-SPAM.

### 2. CAN-SPAM's Narrow Express Preemption Exception Does Not Apply to Plaintiffs' IDCEMA Claims.

CAN-SPAM's narrow exception applies only to statutes that prohibit traditionally tortious conduct. Statutes like IDCEMA do not qualify, for two reasons. First, Plaintiffs' IDCEMA claims

are not grounded in traditional tort principles. Second, even if Plaintiffs tried to recast their IDCEMA claim as a fraud claim to fit within traditional tort principles, their allegations would not meet the heightened Rule 9(b) pleading standard applicable to claims sounding in fraud.

#### i. The IDCEMA Claims Plaintiffs Assert Are Not Grounded in Traditional Tort Principles.

CAN-SPAM preempts state laws like IDCEMA except when those laws "prohibit[] *falsity or deception* in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1) (emphasis added); *see also id.* § 7707(b)(2) (CAN-SPAM preemption does not apply to "(A) State laws that are not specific to electronic mail, including State trespass, contract, or tort law; or (B) other State laws to the extent that those laws relate to acts of fraud or computer crime"). The Ninth Circuit, Fourth Circuit, and the *Martin* court in this circuit have all held this exception "refers to 'traditionally tortious or wrongful conduct.'" *Virtumundo*, 575 F.3d at 1062 (internal citations omitted); *see also Omega World Travel*, 469 F.3d at 354; *see also Martin*, 784 F. Supp. 2d at 1005–06.

Reviewing Illinois's quite similar IEMA, the *Martin* court noted that, "[t]o date, there have been only two circuit court decisions interpreting the CAN–SPAM preemption provision as applied to state statutes related to unsolicited e-mail advertisement," and found persuasive the Fourth and Ninth Circuits' conclusions that the "falsity or deception" preemption exception outlined in CAN-SPAM refers only to state laws that outlaw "traditionally tortious conduct." *Martin*, 784 F. Supp. 2d at 1003, 1005–06. It thus determined that the plaintiff's claims did not rise to the level of fraud and therefore did not fall under the narrow CAN-SPAM preemption exception. *Id.* 1004–07 (citing *Omega*, 469 F.3d at 352–54 and *Virtumundo*, 575 F.3d 1040, 1059–64).

Here, Plaintiffs' IDCEMA claims concerning Ulta's email subject lines similarly do not involve traditional tortious or wrongful conduct, which would require Plaintiffs to plead materiality, reliance, actual injury and deceptive intent. D/N 1-2, ¶¶ 271–76. Courts interpreting analogous state commercial email spam statutes have found that the central purpose of these statutes was to address the "concern[] about the added cost consumers faced" from searching through emails in an era with slow internet and, as a result, "sought to give consumers relief from commercial spam e-mail" in a pre-CAN-SPAM world. *Brown v. Old Navy, LLC*, 567 P.3d 38, 45 (Wash. 2025). CAN-SPAM, meanwhile, was "designed to ensure that 'legitimate businesses would not have to guess at the meaning of various state laws when their advertising campaigns ventured into cyberspace'" by preempting state laws with only a "limited, narrow exception." *Virtumundo*, 575 F.3d at 1061, 1063, (quoting *Kleffman v. Vonage Holdings Corp.*, No. 07–2406, 2007 WL 1518650, at *3 (C.D. Cal. May 23, 2007)) (concluding that CAN-SPAM preempted the analogous California anti-spam statute).

Here, Plaintiffs strictly rely on alleged violations of IDCEMA in bringing their claims and do not allege standalone fraud or other tort claims. *See* D/N 1-2, ¶¶ 254–78. IDCEMA's text confirms that it prohibits the initiation of misleading subject lines and other deceptive header information in commercial emails without incorporating Indiana common law fraud elements like false statements of material facts, knowledge or deceptive intent, reliance, or injury proximately caused by the other party. *Compare* Ind. Code § 24-5-22 *with Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1123 (S.D. Ind. 2011) (listing the elements of Indiana common law fraud).

In *Martin*, the plaintiff alleged, as Plaintiffs do here, that the defendant included "incomplete" or "less than comprehensive information" in email subject lines than the bodies of the emails conveyed, and that if the defendant had provided "complete" information in the subject

line, the plaintiff "would not have opened the e-mail." *Martin*, 784 F. Supp. 2d at 1007; *see* D/N 1-2, ¶¶ 5, 199–201, 223–25. Citing the Fourth and Ninth Circuits' respective decisions in *Omega* and *Virtumundo*, the *Martin* court found that where a retailer includes less than comprehensive information outside the body of an email, that is, at best, a technical statutory violation with no basis in traditional tort theories that is outside the narrow CAN-SPAM preemption exception. *Martin*, 784 F. Supp. 2d at 1005–07. Further, the *Martin* court found that "even if the omitted information could be deemed not only incomplete but also 'misleading,' Plaintiff's claim still would be preempted by the express language of the CAN-SPAM Act, which prohibits subject headings likely to 'mislead a recipient about a material fact regarding the contents of the message.'" *Id.* at 1007. Plaintiffs' claim that the subject lines they received were misleading because they purportedly induce consumers to open emails they otherwise would not, D/N 1-2, ¶ 5, are not claims grounded in traditional tort. Accordingly, the narrow traditional tort exception to CAN-SPAM preemption does not apply to Plaintiffs' IDCEMA claims.

**ii. Plaintiffs Have Not Pled the Elements of a Claim Sounding in Tort.**

Plaintiffs cannot rely on fraud or deceit to establish an exception to CAN-SPAM preemption because they have not pled essential elements of these claims:

> Plaintiffs alleging fraud under Indiana law must establish the following elements to satisfy this heightened pleading standard: (1) a false statement of present or past material fact; (2) knowledge that the statement, when made, was false or made 'recklessly without knowledge of its truth or falsity'; (3) intent to induce another party to act on the statement; (4) actual reliance by the other party; and (5) the proximate result of [an] injury to the other party.

*Hughes*, 818 F. Supp. 2d at 1123 (noting that "[t]hese allegations must appear in the complaint itself"). Without pleading these elements, Plaintiffs' claims cannot fit within the narrow exception to CAN-SPAM preemption.

***Plaintiffs Do Not Allege Any False Statement of Material Fact***. Fraud requires a material misrepresentation, which is not alleged here. *See Virtumundo*, 575 F.3d at 1062; *Omega World Travel*, 469 F.3d at 354; *Martin*, 784 F. Supp. 2d at 1007. Plaintiffs do not allege that any purportedly false statement was material to them, or to any other recipient of the Ulta emails. Plaintiffs never allege that any named Plaintiff, or any other proposed class member, actually was induced to open an email, or became interested in a purchase that did not qualify for a discount. Moreover, Plaintiffs never contend that Ulta failed to honor the promotions offered in email subject lines in keeping with the terms and conditions described in email bodies. In fact, Plaintiffs make no allegation that email subject lines made a difference in their purchase decisions and so do not allege any material representations.

***Plaintiffs Do Not Allege Knowledge or Deceptive Intent***. Plaintiffs do not plausibly allege that Ulta acted with deceptive intent. Plaintiffs never suggest Ulta knowingly transmitted false or deceptive information to Indiana residents. Plaintiffs claim that Ulta "knowingly omits" conditions from its subject lines, but the only support for that accusation is that Ulta has historically sent these types of emails. D/N 1-2, ¶¶ 6, 7. That is not enough. Plaintiffs must allege "sufficient underlying facts from which a court may reasonably infer that the defendant acted with the requisite state of mind." *Promote Innovation LLC v. Roche Diagnostics Corp.*, 793 F. Supp. 2d 1090, 1096–97 (S.D. Ind. 2011) (dismissing complaint where plaintiff failed to allege particular facts plausibly suggesting that the defendants intended to deceive the public) (citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009)) (internal quotations omitted). Even viewed in the light most favorable to Plaintiffs, Plaintiffs' claims do not even allege generally that Ulta knew email subject lines were false. They simply allege Ulta had a consistent practice

of email subject line marketing. Alleging a historic marketing practice is not the same as actually pleading Ulta knowingly omitted conditions to produce a specific result.

***Plaintiffs Do Not Allege Reliance***. Plaintiffs do not allege that they relied on any purported misrepresentation in Ulta's email subject lines. Instead, Plaintiffs theorize that the alleged omissions in these subject lines could theoretically induce consumers to "open emails" and "consider purchases they might otherwise ignore." D/N 1-2, ¶ 5. Alleging only receipt of subject lines that could induce a recipient to open an email and "consider" a purchase is not the same as alleging that anyone acted in reliance on those subject lines.

***Plaintiffs Do Not Allege Actual Injury***. Plaintiffs also fail to allege an injury sufficient to make out a traditional fraud claim. Plaintiffs argue that Ulta purportedly "clogs email inboxes with false information," *id.* ¶ 13, but Plaintiffs never contend that they have been deceived by these subject lines into making a purchasing decision, or that any Plaintiff has actually suffered an injury as a result of Ulta's purported deceit.

Because Plaintiffs fail to allege any element of a traditional tort claim, their claims cannot fit within the narrow preemption exception to CAN-SPAM.

#### iii. Plaintiffs Cannot Meet Rule 9(b) Pleading Standards That Apply to Fraud Claims.

Even if Plaintiffs could somehow transform their IDCEMA claim into a traditional tort claim (which they cannot), their claim would still fail under the heightened pleading standard of Rule 9(b). "Rule 9(b)'s heightened pleading standard requires plaintiffs to allege fraud with 'particularity.'" *Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*, 897 F.3d 797, 805 (7th Cir. 2018). Rule 9(b)'s purpose "is to ensure that the party accused of fraud . . . is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading." *Lachmund v. ADM Inv'r Servs., Inc.*, 191 F.3d 777,

783 (7th Cir. 1999). Plaintiffs must allege "the who, what, when, where, and how" of the alleged fraud. *Hughes*, 818 F. Supp. 2d at 1122–23.

Here, Plaintiffs identify and provide a bare list of promotional subject line categories, without alleging who drafted them, how they were false, how any recipient relied on them, and/or how anyone was injured. D/N 1-2, ¶¶ 32–198, 211–21. As a result, Plaintiffs have not provided Ulta with reasonable notice of any particular misconduct that would constitute fraud, much less at the level of specificity required by Rule 9(b). *See Lachmund*, 191 F.3d at 783. CAN-SPAM preemption thus applies to bar Plaintiffs' claims. Because Plaintiffs' claims are preempted by CAN-SPAM, their Complaint should be dismissed with prejudice.

**B. Conflict Preemption Bars Plaintiffs' IDCEMA Claim.**

Independent of express preemption, conflict preemption bars Plaintiffs' IDCEMA claim. *See English*, 496 U.S. at 78–80 (discussing conflict preemption). Conflict preemption applies where "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 80 (internal quotation marks omitted) (citation omitted); *see also Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000) (recognizing that "the savings clause [like an express preemption provision] does *not* bar the ordinary working of conflict pre-emption principles"); *Meyer v. United Healthcare Ins.*, 840 F. App'x 174, 176 (9th Cir. 2021) (finding express preemption exceptions inapplicable to claims otherwise preempted by conflict preemption). Congress passed CAN-SPAM as "one national standard applicable across jurisdictions" because "the patchwork of state laws had proven ineffective." *Virtumundo*, 575 F.3d at 1062–63 (internal quotation marks omitted) (citation omitted); *see also Martin*, 784 F. Supp. 2d at 1003; 15 U.S.C. § 7701(a)(11). Likewise, "a single e-mail could instantaneously implicate the laws of multiple jurisdictions . . . before reaching its intended recipient, whose location is often unknown. Therefore, 'one state's Internet laws may impose compliance costs on businesses

throughout the country.'" *Virtumundo*, 575 F.3d at 1063 (citation omitted). To this end, Congress intended that businesses "would not have to guess at the meaning of various state laws when their advertising campaigns ventured into cyberspace." *Id.* (citing *Kleffman*, 2007 WL 1518650, at *3). That is because,"[i]t would be logically incongruous to conclude that Congress endeavored to erect a uniform standard but simultaneously left states and local lawmakers free to manipulate that standard to create more burdensome regulation." *Id.*; *see also Martin*, 784 F. Supp. 2d at 1003.

With this lens in mind, IDCEMA is a significant obstacle to CAN-SPAM's goal "to regulate commercial email 'on a nationwide basis'" and give businesses certainty. *Virtumundo*, 575 F.3d at 1061–62; *Martin*, 784 F. Supp. 2d at 1003 (quoting 15 U.S.C. § 7701(b)(1)). Specifically, IDCEMA and CAN-SPAM differ in several key respects:

- **IDCEMA Requires Knowledge of Indiana Residency**: IDCEMA requires the sender knows or reasonably should know the recipient is an Indiana resident; CAN-SPAM does not. *Compare* Ind. Code § 24-5-22-7(c)(2) *with* 15 U.S.C. § 7704(a)(2). Indeed, in enacting CAN-SPAM, Congress recognized that it is "extremely difficult for law-abiding businesses to know with which of these disparate [state] statutes they are required to comply" because email addresses "[do] not specify a geographic location." 15 U.S.C. § 7701(a)(11).
- **CAN-SPAM Targets Deception About Material Facts**: CAN-SPAM targets deception concerning material facts; IDCEMA does not. IDCEMA targets simply "false or misleading information in the subject line." *Compare* Ind. Code § 24-5-22-7 *with* 15 U.S.C. § 7704(a)(2).
- **IDCEMA Punishes More Than Just Sending Emails**: Regarding email subject lines, IDCEMA is broader than CAN-SPAM in that it penalizes sending, conspiring to

send, or assisting in the transmission of a commercial email subject line; CAN-SPAM penalizes only sending the email subject line. *Compare* Ind. Code § 24-5-22-7 *with* 15 U.S.C. § 7704(a)(2).

IDCEMA's burdensome requirements thus impede CAN-SPAM's objectives to provide businesses certainty by "regulat[ing] commercial email 'on a nationwide basis.'" *Virtumundo*, 575 F.3d at 1061–62 (quoting 15 U.S.C. § 7701(b)(1)). The lack of significant case law interpreting IDCEMA throughout its entire 22-year history suggests that IDCEMA was all but abandoned three months after its passage, when Congress passed CAN-SPAM. P.L. 36-2003, § 1 (codified at Ind. Code § 24-5-22-1 et seq.) (effective July 1, 2003); CAN-SPAM Act, Pub. L. No. 108-187, 117 Stat. 2699 (Oct. 22, 2003) (effective Jan. 1, 2004). In practice, CAN-SPAM has supplanted IDCEMA, and certainly supplants its conflicting provisions, including those invoked by Plaintiffs. Accordingly, conflict preemption applies, and Plaintiffs' Complaint fails under Rule 12(b)(6). *See English*, 496 U.S. at 78–80.

## IV. IDCEMA Is Unconstitutional Under the Dormant Commerce Clause.

Plaintiffs' Complaint also independently fails because IDCEMA is "implicitly preempt[ed]" by the dormant Commerce Clause, because "the Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State." *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 667 (7th Cir. 2010) (quoting *Healy v. Beer Inst.*, 491 U.S. 324, 336–37 (1989)).

As a threshold matter, IDCEMA inappropriately provides "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Lebamoff Enters., Inc. v. Rauner*, 909 F.3d 847, 851 (7th Cir. 2018) (quoting *Granholm v. Heald*, 544 U.S. 460, 472 (2005)) (internal quotation marks omitted). IDCEMA's residency-triggered liability

forces out-of-state competitors to build out Indiana specific segmentation for interstate email campaigns, while retailers operating exclusively in Indiana can adopt IDCEMA as a default rule and avoid similar costs. This disparate treatment underscores IDCEMA's unconstitutional reach.

IDCEMA also "directly controls commerce occurring wholly outside" of Indiana. *Healy*, 491 U.S. at 336.[1] IDCEMA imposes liability on any company that sends commercial emails to an address that the company knows, or has reason to know, is held by a resident of Indiana regardless of the recipient's location. Ind. Code § 24-5-22-7(c)(2). For example, Ulta (headquartered in Illinois) may email an Indiana resident away at college in Illinois. This transaction takes place totally outside of Indiana, yet IDCEMA tries to govern it. That is not a mere upstream effect of a neutral in-state standard; it is the direct regulation of out-of-state marketing practices aimed at a nationwide audience in violation of the dormant Commerce Clause, with Indiana's rules effectively exported into every other state. *See Lebamoff*, 909 F.3d at 855 (invalidating an Illinois residency-based sales statute under the dormant Commerce Clause).

Lastly, IDCEMA violates the dormant Commerce Clause because it creates "a lack of national uniformity [that] impede[s] the flow of interstate goods." *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 128 (1978); *see also Healy*, 491 U.S. at 336–37. IDCEMA's subject line requirements impose burdens in states outside Indiana for a minimal local benefit, forcing companies like Ulta to investigate regulatory schemes state by state and then eliminate email

[1] The Supreme Court in *National Pork Producers Council v. Ross* declined to find a per se rule against extraterritoriality following *Healy*, but it did not address the unconstitutionality of state laws like IDCEMA that directly regulate out-of-state transactions with no connections to the state. 598 U.S. 356, 376 n.1 (2023) (maintaining that state laws cannot "directly regulate[] out-of-state transactions by those with no connection to the State"); *see also Nat'l Shooting Sports Found. v. Bonta*, 718 F. Supp. 3d 1244, 1256 n.1 (S.D. Cal. 2024) (finding that *National Pork* "did not disturb the constitutional bar on state laws that directly regulate out-of-state transactions by those with no connection to the State" (cleaned up)), *reconsideration denied*, 2025 WL 1012326 (S.D. Cal. Mar. 31, 2025); *Ass'n for Accessible Meds. v. Ellison*, 704 F. Supp. 3d 947, 953 (D. Minn. 2023) (*National Pork* "did not change the rule that a state may not directly regulate transactions that take place wholly outside the state and have no connection to it"), *aff'd*, 140 F.4th 957 (8th Cir. 2025).

addresses for Indiana residents (if even possible) to circumvent $500-per-email penalties. Ind. Code § 24-5-22-10(d)(2). This burdensome analysis is precisely what CAN-SPAM's nationwide standard intended to prevent. *See supra* Part III; *Virtumundo*, 575 F.3d at 1062–63; *Martin*, 784 F. Supp. 2d at 1003; *Midwest Title Loans*, 593 F.3d at 669; *Nat'l Solid Wastes Mgmt. Ass'n v. Meyer*, 63 F.3d 652, 658–60 (7th Cir. 1995) (finding a Wisconsin statute invalid under the dormant Commerce Clause as it effectively mandated Wisconsin's regulations nationwide).

Because IDCEMA presents a "serious risk of inconsistent obligations wrought by the extraterritorial effect of the Statute," it "constitutes a per se violation of the Commerce Clause." *Nat'l Solid Wastes Mgmt. Ass'n*, 63 F.3d at 660 (internal citations omitted). Accordingly, the Complaint should be dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint with prejudice in its entirety.

Dated: January 16, 2026

Respectfully submitted,

*<u>/s/ Christina Fugate</u>*

Christina L. Fugate (27218-49)
Audrey K. Howard (30653-53)
Angela M. Rinehart (34753-49)
**ICE MILLER LLP**
One American Square, Suite 2900
Indianapolis, IN 46282-0200
Telephone: (317) 236-2100
Christina.Fugate@icemiller.com
Audrey.Howard@icemiller.com
Angela.Rinehart@icemiller.com

*<u>/s/ Craig C. Martin</u>*
Craig C. Martin (admitted *pro hac vice*)
Amanda S. Amert (admitted *pro hac vice*)
Debra Bogo-Ernst (admitted *pro hac vice*)
Melanie L. Lee (admitted *pro hac vice*)
**WILLKIE FARR & GALLAGHER LLP**
300 North LaSalle Drive
Chicago, IL 60654
Telephone: (312) 728-9000
Facsimile: (312) 728-9199
cmartin@willkie.com
aamert@willkie.com
dernst@willkie.com
mlee@willkie.com

*Attorneys for Defendant Ulta Salon, Cosmetics & Fragrance, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2026, a copy of the foregoing was electronically filed through the Court's CM/ECF System, which will provide electronic notice to all counsel of record.

Dated: January 16, 2026

**ICE MILLER LLP**

*/s/ Christina L. Fugate*

Christina L. Fugate (27218-49)
Audrey K. Howard (30653-53)
Angela M. Rinehart (34753-49)
One American Square, Suite 2900
Indianapolis, IN 46282-0200
Telephone: (317) 236-2100
Christina.fugate@icemiller.com
Audrey.howard@icemiller.com
Angela.rinehart@icemiller.com

*Attorneys for Defendant Ulta Salon, Cosmetics & Fragrance, Inc.*