**IN UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

LISA COLE, ASHLEY JOHNSON, MISTY GREBEL, ALEXIS BRIMHALL, KAYLA SLACHTA, and JILL REISINGER, on their own behalf and on behalf of others similarly situated,

*Plaintiffs*,

v.

ULTA SALON, COSMETICS & FRAGRANCE, INC.,

*Defendant*.

Case No. 1:25-cv-02521-RLY-MJD

# Plaintiffs' Opposition to Ulta Salon, Cosmetics & Fragrance, Inc.'s Motion to Dismiss

# Table of Contents


Introduction ........................................................................................................ 4

Factual Background ............................................................................................. 5

Legal Standard ..................................................................................................... 7

Argument ............................................................................................................. 8

I. Plaintiffs have properly stated a claim under IDCEMA. ......................... 8

A. The plain language of IDCEMA prohibits any false or misleading information in the subject line and cannot be cured by the message in the body of the email. ............................................................... 8

B. Plaintiffs' allegations are sufficient to state a claim under IDCEMA. ............................................................................................. 14

1. "Free gift" Subject Lines ....................................................... 14

2. Percentage Discount Subject Lines .......................................... 17

3. Concealing Commercial Purpose of Emails ............................. 18

C. Plaintiffs Plausibly Allege Ulta Knew or had Reason to Know it Sent Emails to Indiana Residents. ................................................ 18

II. IDCEMA is not preempted by CAN-SPAM. ....................................... 20

A. CAN-SPAM preemption does not apply to state laws barring falsity or deception in email subject lines. ............................................... 20

B. Plaintiffs are not required to plead common-law tort elements or satisfy Fed. R. Civ. P. 9(b) to avoid CAN-SPAM preemption. ........ 25

C. Plaintiffs have alleged Ulta sent and Plaintiffs received emails with false and materially deceptive subject lines that had the capacity to deceive a reasonable consumer. .................................................. 26

D. Conflict preemption does not apply because IDCEMA operates in harmony with CAN-SPAM's objectives and fists within its express saving clause. ....................................................................... 27

1. Compliance with both IDCEMA and CAN-SPAM is not impossible. ......................................................................... 28

2. IDCEMA is not an obstacle to CAN-SPAM's objectives. .......... 28

III. Plaintiffs' Complaint satisfies Fed. R. Civ. P. 8's pleading requirements. .......... 30

IV. IDCEMA is constitutional under the Dorman Commerce Clause. ....... 32

V. Conclusion .......... 33

Plaintiffs Lisa Cole, Ashley Johnson, Misty Grebel, Alexis Brimhall, Kayla Slachta, and Jill Reisinger ("Plaintiffs") file this Opposition to the Motion to Dismiss ("Motion") filed by Defendant Ulta Salon, Cosmetics & Fragrance, Inc. ("Ulta" or "Defendant"), and state:

**INTRODUCTION**

Ulta's Motion (ECF #35) rests on a fundamentally flawed premise: Indiana's Deceptive Commercial Electronic Mail statute, Ind. Code § 24-5-22 ("IDCEMA") does not regulate whether the information conveyed in a commercial electronic mail ("email") subject line is false or misleading, so long as the email sender later discloses qualifying terms and conditions and corrects deception contained in the subject line after the email recipient clicks into the email message. In Ulta's view, a subject line that misrepresents an offer as "free" or has a universal discount is lawful – even if it is false and capable of deception – because the email message ultimately reveals the purchase requirements needed to receive the purported "free" gift (that is not actually free). That construction would render IDCEMA's subject-line prohibition meaningless. If true, businesses could say anything in an email subject line so long as the truth was later disclosed in the body of the email. A cursory reading of IDCEMA negates this argument. Moreover, the only state supreme court to consider this exact issue dramatically and directly rebuked Ulta's argument. Published opinions related to "free gift" email subject lines have allowed these anti-spam claims to advance past dispositive motions.

Nonetheless, Ulta argues Plaintiffs fail to satisfy Fed. R. Civ. P. 8, because they do not plead reliance, actual deception, or individualized injury. Ulta also challenges Plaintiffs' reliance on FTC guidance concerning "free" offers, contends Plaintiffs have not pled facts sufficient to state a claim under IDCEMA, contends the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM"), 15 U.S.C. §§ 7701, *et*

*seq.*, preempts Plaintiffs' IDCEMA claim, and that IDCEMA is unconstitutional under the Dormant Commerce Clause. Each argument depends on narrowing IDCEMA beyond its plain text and disregards persuasive authority holding statutes like IDCEMA are deception-based, tort-like consumer protection statutes that survive CAN-SPAM preemption.

IDCEMA unambiguously prohibits sending emails containing false or misleading subject lines. Plaintiffs allege Ulta's "free gift" and "percentage discount" subject lines falsely represent the nature of the offers, induce recipients to open emails and consider purchases they otherwise would not, and have the capacity to deceive reasonable consumers. Likewise, Ulta's preemption and constitutionality arguments also fail. CAN-SPAM specifically exempts from preemption any state consumer protection law that "prohibits falsity or deception in any portion of a commercial electronic mail message[.]" 15 U.S.C. § 7707(b)(1). IDCEMA falls squarely into the CAN-SPAM exemption from preemption and no court has found state anti-spam e-mail laws such as IDCEMA violate the Dormant Commerce Clause. For these reasons, the Court should deny the Motion.

## FACTUAL BACKGROUND

Plaintiffs are Indiana residents who received hundreds of Ulta's promotional emails. Compl. ¶¶ 15-20, 236-40. The emails at issue are Ulta's "Free Gift Emails" – commercial emails with subject lines affirmatively representing recipients are being offered a "free gift," while omitting the purchase required to obtain the purported gifts – and "Percentage Discount Emails" – commercial emails with subject lines promising unqualified percentage discounts while concealing material exclusions. *Id.* ¶¶ 2-11, 29-226. Plaintiffs received emails with subject lines such as: "SO MANY FREE GIFTS INSIDE"; "Did someone say FREE GIFT? (Choose from 8!)"; "FREE 22 PC gift + JUST ADDED Cyber Monday deals"; "A $131

value—but FREE for you!"; "Want a FREE mystery gift?"; "20% OFF your entire purchase"; and, dozens more like them. *Id.* ¶¶ 33-221.

Ulta entices consumers to join its email program in exchange for promotional offers, discounts, and "free gifts." *See* https://www.ulta.com/rewards/faq ("we will send you a coupon for a birthday gift") (last visited Mar. 13, 2026). Ulta sent hundreds of emails to Plaintiffs offering "free gifts" in the subject line. Some of these "free gift" emails allowed Plaintiffs to obtain a "free gift" without a purchase requirement. Compl. ¶¶ 208-10. But many of the "free gift" emails contained a purchase requirement buried in the email's message that can be viewed only after clicking into the email. As Plaintiffs allege, the "free gift" subject lines imply one or more "free gifts" are being provided unconditionally and at no cost. Compl. ¶¶ 199-203. Upon opening the emails, recipients learn the advertised "free gifts" require a qualifying minimum purchase. *Id.* Ulta further restricts these offers through fine-print disclosures, including exclusions, supply limitations, and express statements that the "[g]ift item cannot be used to satisfy the dollar purchase requirement." *Id.* ¶ 201. Because recipients must spend money before becoming entitled to the purported "free" item, Plaintiffs allege any subject line implying an unconditional "free gift" is false or misleading. *Id.* ¶¶ 2, 5, 202-03. Ulta itself acknowledges there is a "dollar purchase requirement for the free gift." *Id.* ¶ 203.

With respect to Percentage Discount Emails, Plaintiffs allege subject lines such as "20% off your ENTIRE PURCHASE" imply a straightforward discount on the recipient's entire purchase without limitation. *Id.* ¶¶ 211-26. Fine print at the bottom of each email message, however, reveals the percentage discount excludes numerous brands and categories, and the offer cannot be combined with other promotions or applied to specific services or gift

cards. *Id.* ¶ 223. Such omissions create a reasonable probability consumers will be misled about the true scope of the discount as expressed in the subject line. *Id.* ¶ 226.

Plaintiffs also allege Ulta knows how to disclose qualifying conditions in subject lines. *Id.* ¶¶ 204-10 ("FREE 25 PC gift with any $80 online purchase" on December 5, 2022, and "FREE 6 PC gift with $55 online purchase & 20% off hair tools! Details inside" on August 22, 2025). These examples demonstrate Ulta's omission of purchase requirements from many "free gift" subject lines is not accidental or unavoidable, but instead a deliberate tactic designed to entice recipients to open emails and make purchases. *Id.* ¶¶ 2-5.

Plaintiffs maintain Ulta customer accounts, have made purchases through Ulta's website, and provided Ulta with billing and shipping addresses, along with telephone numbers. Ulta has access to account and customer profile data, billing and shipping addresses, IP-based location data, and other information provided by Plaintiffs and received from third-parties. All reflecting Plaintiffs' Indiana residency. *Id.* ¶¶ 228-40, 263.

## LEGAL STANDARD

"When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff." *Noble Roman's, Inc. v. Allison*, 412 F. Supp. 3d 989, 992-993 (Ind. S.D. 2019), *citing Bielanski v. County of Cane*, 550 F.3d 632, 633 (7th Cir. 2008). The complaint only has to contain a "short and plain statement showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations in the complaint must, however, give the defendant "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007). In other words, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir.

2009). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) citing *Twombly*, 550 U.S. at 556.

## ARGUMENT

### I. Plaintiffs have properly stated a claim under IDCEMA.

CAN-SPAM discusses and regulates three separate elements of an email: 1) header information (15 U.S.C. § 7701(a)(7), § 7702(8) and § 7704(a)(1)); 2) subject line (§ 7701(a)(8), § 7704(a)(2)); and, 3) message (15 U.S.C. § 7704). Each element of an email conveys different "information" to the recipient, and each can mislead the recipient in different ways. IDCEMA was created to root out deception that can occur *prior* to when a recipient makes the decision to open email. In this regard, IDCEMA places strict limitations on what the email sender can include in a subject line, but does not restrict the contents of the message.

All parties agree that IDCEMA regulates "commercial electronic mail" (Ind. Code § 24-5-22-2(a)) and does not allow "false or misleading information in the subject line[.]" Ind. Code § 24-5-22-7(b)(3), (c). Ulta interprets IDCEMA's text to place no limit on how "false or misleading" the subject line information can be, so long as the body of the email discloses terms and conditions qualifying the misleading subject line offer. This argument contradicts IDCEMA's clear language. Ulta's Motion should be denied because the email subject lines are facially "false" and "misleading."

#### A. The plain language of IDCEMA prohibits any false or misleading information in the subject line and cannot be cured by the message in the body of the email.

Indiana Code §§ 24-5-22-7(b)(3) and (c) contain the following prohibition: "[a] person may not initiate or assist the transmission of a commercial electronic mail message" that

"contains false or misleading information in the subject line" to an electronic mail address held by a resident of Indiana. This broad language was intended to prevent businesses from sending emails with any "false or misleading information in the subject line[.]" Ulta does not challenge Plaintiffs' position on the statutory text. Rather, Ulta urges this Court to overlook the overwhelming authority against its position. This Court must start where all statutory interpretation starts, with the text of the statute.

"In Indiana, the lodestar of statutory interpretation is legislative intent, and the plain language of the statute is the 'best evidence of ... [that] intent.'" *Estate of Moreland v. Dieter,* 576 F.3d 691, 695 (7th Cir. 2009) (quoting *Cubel v. Cubel,* 876 N.E.2d 1117, 1120 (Ind. 2007)). Unless a statute indicates otherwise, we must give the words in the statute their plain and ordinary meaning, and we must examine the statute as a whole, "avoiding both excessive reliance on strict literal meaning and selective reading of individual words." *Scherr v. Marriott Int'l, Inc.,* 703 F.3d 1069, 1077 (7th Cir. 2013). When the language of a statute is clear, we must enforce the statute as written, and we "have no power to construe the statute for the purpose of limiting or extending its operation." *Indiana Dep't of State Revenue, Inheritance Tax Div. v. Estate of Parker,* 924 N.E.2d 230, 233 (Ind. Tax. Ct. 2010); *see also Scherr,* 703 F.3d at 1077 ("when the language of a statute is plain, we enforce it according to its terms.")

Indiana courts have long held that the "goal in statutory interpretation is to determine, give effect to, and implement the intent of the legislature as expressed in the plain language of its statutes." *Clark County Drainage Bd. v. Isgrigg,* 966 N.E.2d 678, 680 (Ind. Ct. App. 2012). "The first rule of statutory construction is that words and phrases shall be taken in their plain, or ordinary and usual, sense." *Id.* Further, courts may not "engraft new words" onto a statute or add restrictions where none exists. *Kitchell v. Franklin,* 997 N.E.2d 1020, 1026 (Ind. 2013).

No word or part should be rendered meaningless if it can be reconciled with rest." *West v. Off. Of Indiana Sec. of State,* 54 N.E.3d 349, 353 (Ind. 2016). In *Nash v. State,* 881 N.E.2d 1060, 1063 (Ind. Ct. App. 2008), the Court noted:

> We will examine the statute as a whole and avoid excessive reliance on a strict literal meaning or the selective reading of words. Where the language of the statute is clear and unambiguous, there is nothing to construe. However, where the language is susceptible to more than one reasonable interpretation, the statute must be construed to give effect to the legislature's intent. The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an absurd or unjust result. Thus, we must keep in mind the objective and purpose of the law as well as the effect and repercussions of such a construction.

Additionally, the Indiana Supreme Court has observed, "as we interpret the statute, we are mindful of both what it does say and what it does not say." *ESPN, Inc., v. U. of Notre Dame Police Dept.,* 62 N.E.3d 1192, 1195 (Ind. 2016) (internal quotations omitted). In other words, "we are obligated to suppose that the General Assembly chose the language it did for a reason." *State v. Prater,* 922 N.E.2d 746, 749 (Ind. Ct. App. 2010), *trans. denied.*

On its face, and after removing any text not directly related to the subject line provision, IDCEMA states the email subject line sent to Indiana recipients cannot contain false or misleading information. IDCEMA § 24-5-22-7(b)(3) and (c). Notably, Indiana's prohibition is stated in unqualified terms. IDCEMA does not require that the false or misleading information deceive the recipient – the subject line simply may not contain "false or misleading information."

Nonetheless, Ulta asserts Plaintiffs fail to allege a cause of action under IDCEMA because the full text of the emails referenced by Plaintiffs in the Complaint clearly discloses all terms and conditions related to the promotions contained in the subject lines. IDCEMA expressly prohibits the transmission of a "commercial electronic mail message that contains

false or misleading information in the subject line." Ind. Code § 24-5-22-7(b)(3), (c). The statute does not say the message can "clarify" or "cure" a misleading subject line after a recipient opens the email.

IDCEMA's subject-line prohibition tells the Court what is regulated, who is regulated, where it applies, and what conduct is forbidden. IDCEMA identifies the regulated medium – "commercial electronic mail message" – and defines its scope as "commercial," i.e., "an electronic mail message sent to promote the sale or lease of real property, goods, or services." Ind. Code § 24-5-22-2(a). IDCEMA then identifies the regulated act and actor: a "person may not initiate or assist the transmission" of such mail. Ind. Code § 24-5-22-7(c). IDCEMA makes the geographic and recipient limitations express: the prohibition applies to emails sent to an electronic mail address the sender knows or has reason to know is held by an Indiana resident. Ind. Code § 24-5-22-7(c). In other words, IDCEMA clearly spells out the regulated medium (commercial email), the regulated conduct (initiating/assisting), and the jurisdictional area (Indiana recipients) in the operative prohibition itself.

The statutory text reinforces the regulated scope. IDCEMA directs the court to examine whether the subject line "contains" "false or misleading" "information." Specifically, IDCEMA references email that "[c]ontains false or misleading information in the subject line" and provides no mechanism for the message body to cure, correct, or supplement that prohibition. Nothing in IDCEMA's text supports Ulta's argument that the email message can cure the "false or misleading information in the subject line[.]" IDCEMA's text is not ambiguous and is limited to a prohibition of deceptive subject line statements.

The leading judicial authority on this issue confirms Plaintiffs' reading. In *Brown v. Old Navy, LLC*, the Washington Supreme Court held Washington's Commercial Electronic Mail

Act ("WCEMA") subject-line prohibition unambiguously applies to any false or misleading "representations of fact" in the subject line, regardless of whether the message clarifies or corrects the false or misleading information. *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025). In *Brown*, the email sender's effort to recast WCEMA's subject-line prohibition as a narrow, "transmission-level" rule limited to deception about whether an email is an advertisement was rejected. The Washington Supreme Court held that WCEMA unambiguously "prohibits the use of any false or misleading information in the subject line of a commercial email," and "[t]o violate subsection (1)(b), an e-mail subject line does not need to deceive consumers about the subject or purpose of the e-mail – it merely needs to contain false or misleading information," including where the subject-line statement "does not deceive consumers about the advertising purpose or commercial nature of the e-mail." *Brown*, 567 P.3d at 41, 44-46.

Critically here, *Brown* makes clear the subject line must be truthful. Determining whether a subject line is misleading requires evaluating "the subject line alone" because WCEMA – just like IDCEMA – "does not regulate the body of the e-mail, only the subject line," and reaffirms that WCEMA "requires truthfulness in e-mail subject lines, and that such truthfulness does not depend on what the rest of the e-mail conveys[.]" *Id.* at 44, 47. While "mere puffery" is not actionable, "mere puffery" is "contrasted by representations of fact – like the … availability of a promotion, its terms and nature, the cost of goods, and other facts Washington residents would depend on in making their consumer decisions." *Id.* at 47. Subject lines telling consumers "SO MANY FREE GIFTS INSIDE" or "20% OFF your entire purchase" are objectively verifiable representation about the nature/terms/availability

of the offer – and under *Brown*, the email body cannot "cure" a subject line by disclosing limiting conditions later; the subject line must be truthful on its own terms.

IDCEMA § 24-5-22-7(b)(3) and WCEMA § 19.190.020(1)(b) contain the same subject-line restriction: "contains false or misleading information in the subject line[.]" IDCEMA must therefore be interpreted the same as WCEMA by prohibiting falsity or deception in the subject line without regard to additional disclosures in the email message. *Harrington v. Vineyard Vines, LLC*, No. C25-1115 TSZ, 2025 LEXIS 570715 (W.D. Wash. Dec. 18, 2025) ("attempt[ing] to rely on the bodies of the emails at issue as excusing or correcting the allegedly false or misleading information in the subject lines of the emails runs contrary to … *Brown*." Simply put, the Court cannot look past the subject line to cure subject-line falsity.

In fact, the broader structure of IDCEMA reinforces this reading and confirms Indiana's legislative intent. IDCEMA's subject-line prohibition does not stand alone. Section 24-5-22-8 of the statute independently requires all unsolicited email include "ADV:" as the first four characters of the subject line so that Indiana recipients can identify, before opening the email, that the email is an advertisement. *See* Ind. Code § 24-5-22-8(1). The statute goes further. Where the unsolicited email contains content a minor may not purchase or possess, solicits an extension of credit, or contains matter harmful to minors, it must use "ADV:ADLT" as the first eight characters of the subject line. *See* Ind. Code § 24-5-22-8(2). These labeling requirements reflect an unmistakable legislative judgment that Indiana consumers make decisions whether to open an email based on the subject line, and Indiana law protects them at that precise moment of decision – ***before the email is opened***. The Indiana General Assembly specifically mandated the subject line truthfully signal the nature and content of the commercial email, because it understood consumers rely on the contents of the

subject lines when deciding whether to open a message. If the Legislature intended recipients to look past the subject line and into the email message to discover the truth of any subject-line representation, then it would not have enacted subject-line-level disclosure requirements compelling senders to reveal key information before the email is opened. Ulta's argument that subject-line falsity can be cured by later disclosure in the message body directly contradicts this deliberate legislative design.

### B. Plaintiffs' allegations are sufficient to state a claim under IDCEMA.

#### 1. "Free gift" subject lines

Courts applying analogous statutes hold "free gift" subject lines are actionable where they conceal material conditions – such as a payment requirement or purchase obligations – that are not revealed until after the recipient opens the email. In *Hypertouch v. ValueClick, Inc.*, the court held that the email recipient stated a claim where "the subject lines of many e-mails contained statements likely to mislead recipients into believing that they could obtain a free gift when, in fact, the gift could only be obtained by paying a fee or participating in additional promotional offers." *Hypertouch v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 815-16 and 838 (Cal. Ct. App. 2011); *Asis Internet Servs. v. Vistaprint United States, Inc.*, 617 F. Supp. 2d 989, 992 (N.D. Cal. 2009) (explaining "email subject lines that offer a free gift are misleading and deceitful because they are likely to deceive a reasonable consumer by tricking them into thinking they are getting a free gift and by concealing the information that they must pay a fee to get that free gift"); *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 938 (N.D. Cal. 2009) (finding "emails contained subject lines that would be likely to mislead a recipient" by "enticing them with free gifts," where the offers "came with strings attached").

More recently, in *Vineyard Vines*, 2025 LEXIS 570715, consumers alleged "Vineyard falsely or deceptively worded its subject lines . . . to advertise a global sale ("30% Off EVERYTHING") when the discount could not be claimed on individual items, but rather was available only if a customer spent a minimum of $150." The court found that these allegations were sufficient to allege falsity and materiality under WCEMA. And critically, the court went onto find that "Vineyard's attempt to rely on the bodies of the emails at issue as excusing or correcting the allegedly false or misleading information in the subject lines of the emails runs contrary to the Washington State Supreme Court's analysis in *Brown*." *Id.*

These principles fit this case where Plaintiffs allege the promised "free gift" never existed and consumers could not obtain a "free gift" without making a large purchase. Plaintiffs allege Ulta's subject lines communicated that Ulta was giving them a "free gift" (Compl. ¶¶ 33-203), while the email message required a minimum purchase to obtain the "free" gift. None of the offer terms were contained in the subject line. Including material terms in the subject line is not difficult and is something Ulta occasionally chose to do. *Id.* ¶¶ 204-210 (sending emails with subject lines stating "FREE 25 PC gift with any $80 online purchase" on December 5, 2022, and "FREE 6 PC gift with $55 online purchase & 20% off hair tools! Details inside" on August 22, 2025).

Plaintiffs do not seek to privately enforce FTC regulations. Rather, they cite FTC Guidelines as persuasive authority confirming how reasonable consumers understand terms like "free" and why undisclosed conditions render such representations misleading. 16 C.F.R. § 251.1(c) (explaining offers described as "free" must disclose all material conditions "at the outset" to avoid deception). Courts routinely look to FTC guidelines when assessing whether conduct is deceptive under consumer-protection statutes. *See Brown*, 567 P.3d at 51-52.

Ulta's attempt to turn the FTC's "Free Offer Guide" against Plaintiffs rests on a misreading of Plaintiffs' theory and FTC guidelines. Plaintiffs do not contend "free gift" offers are categorically unlawful. Plaintiffs' argument is narrower and lies squarely within IDCEMA: that Ulta's subject lines affirmatively represent an offer as "FREE" or a percentage discount as applying to an "entire purchase" while omitting material limitations that change the offer's nature and scope (a minimum-purchase threshold for the "free" gift; sweeping exclusions for the "entire purchase" discount). Such omissions can render a subject line "false or misleading" under IDCEMA even if some terms later appear in the email message.

Nothing in 16 C.F.R. § 251.1 immunizes subject lines that create a misleading net impression. Section 251.1(a) merely recognizes that "free" offers are a common promotional device – it does not authorize sellers to convey "FREE" in a way that is likely to mislead consumers about the material conditions required to obtain the item. Ulta does not find relief in 16 C.F.R. § 251.1(b)(1). At most, it recognizes consumers often understand that "free" offers may be connected to another purchase. But that observation does not mean consumers are never misled by how "free" is presented. When the purchase requirement is itself the material condition that determines whether the "free" item is obtainable without spending money, omitting that condition from the subject line is misleading – especially where Ulta knows how to disclose purchase thresholds in subject lines because it has done so previously. Further, IDCEMA does not require an analysis of the email recipient's subjective state of mind, but an objective standard based on the subject line's actual language.

Critically, § 251.1(c) supports Plaintiffs' point about timing: material conditions must be disclosed "at the outset" and in "close conjunction" to the "free" representation. In the email context, the "outset" is what the consumer sees before deciding to open the message.

IDCEMA targets pre-open deception – false or misleading information in the subject line. Ulta's position would collapse the FTC's "at the outset / close conjunction" principle into a rule that allows an advertiser to headline "FREE" and then bury (or at least delay) the purchase requirement until after the consumer has already been induced to open the email.

Ulta also argues because some "free gift" birthday emails provide a genuine free gift without any purchase, other "free gift" emails cannot be false. This argument misses the point. The fact that an email recipient must travel to a store to pick up their "free gift" does not make the representation in the subject line false – the item is still free. Whereas in the other "free gift" emails, the recipient is required to make a purchase to obtain Ulta's "free gift." Free gift emails which require a purchase are materially false. That falsity is exacerbated by Ulta's "free gifts" that do not contain a purchase requirement.

**2. Percentage Discount Subject Lines**

The same logic applies to Percentage Discount Emails. Plaintiffs allege subject lines such as "20% off your ENTIRE purchase" implied a straightforward discount on the recipient's entire purchase without limitation. These misrepresentations are not trivial. They go to the core question a reasonable consumer would ask upon reading the subject line – the cost of goods. The fine print revealing sweeping exclusions does not appear in the subject line and is not disclosed "at the outset" as required by FTC guidelines regarding deceptive pricing. 16 C.F.R. § 233.1.

Ulta's criticism of Plaintiffs' reliance on 16 C.F.R. § 233.1 misses the mark. Plaintiffs cite § 233.1 as persuasive authority for the proposition that when an advertiser uses a broad savings claim ("20% OFF your ENTIRE purchase"), undisclosed limitations and exclusions can create a reasonable probability of misunderstanding about the true scope of the offer.

Plaintiffs are not bringing a standalone "bargain advertising" claim – they are using the FTC's articulation of how consumers understand discount representations to reinforce why Ulta's "entire purchase" subject lines plausibly convey a misleading net impression.

#### 3. Concealing Commercial Purpose of Emails

Additionally, several of Ulta's subject lines obscure or disguise the commercial purpose of the email. Subject lines such as "Did someone say FREE GIFT?" and "Want a FREE mystery gift?" contain no language promoting the sale or lease of any real property, goods, or services – the very conduct that defines a "commercial electronic mail message" under Ind. Code § 24-5-22-2(a). And Ulta was not required to include "ADV:" prior to these email subject lines because Ulta has a prior business relationship with Plaintiffs and the emails were not unsolicited. *See* Ind. Code § 24-5-22-8(1). Yet the body of each such email is clearly designed to induce the recipient to spend money purchasing Ulta's products. This is the precise type of deception IDCEMA was enacted to prevent: a subject line that misleads the recipient about the very nature of the communication they are being asked to open.

### C. Plaintiffs Plausibly Allege Ulta Knew or Had Reason to Know It Sent Emails to Indiana Residents.

Ulta argues that Plaintiffs fail to plead Ulta knew or had reason to know it was sending the challenged emails to Indiana residents. This argument fails on the law and facts.

Indiana Code § 24-5-22-7(a) establishes the standard: "[a] person knows that the intended recipient of a commercial electronic mail message is an Indiana resident if the information is available, upon request, from the registrant of the Internet domain name contained in the recipient's electronic mail address." Plaintiffs allege information concerning their Indiana residency is (and was) available on request from the registrant of the Internet

domain name contained in Plaintiffs' electronic mail addresses. Compl. ¶¶ 259-260. This is sufficient to establish Ulta "knew" Plaintiffs were Indiana residents.

Plaintiffs need to only plausibly allege facts supporting an inference that a sender knew or had reason to know a recipient was an Indiana resident to survive a motion to dismiss. *See Gordon v. Impulse Mktg. Grp., Inc.*, 375 F. Supp. 2d 1040, 1046-47 (E.D. Wash. 2005) (applying analogous standard under Washington anti-spam law). Plaintiffs are Indiana residents who maintain Ulta customer accounts, have made purchases through Ulta's website, and provided Ulta with billing and shipping addresses reflecting Indiana residency. Compl. ¶¶ 236-40. Plaintiffs alleged Ulta maintained each Plaintiff's Indiana shipping and billing addresses for years, linked those addresses to the email accounts at issue, and tracked their in-state activity through loyalty accounts and online interactions. *Id.* ¶¶ 229-35.

Specifically, Plaintiffs' allege Ulta knew or had reason to know Plaintiffs' email addresses are held by Indiana residents through multiple mechanisms: (1) Defendant associates an email address with a shipping address and/or billing address for any order placed online; (2) Defendant encourages online shoppers to create online accounts, in which customers save shipping addresses, billing addresses, and phone numbers; (3) Defendant offers consumers credit cards, requiring consumers to provide a billing address; (4) Defendant employs methods to track the effectiveness of its marketing emails and to identify consumers that click on links contained in Defendant's marketing emails, including by identifying their physical location; (5) Defendant utilizes cookies, pixels, and other online tracking technologies to identify and locate consumers that click on links and visit its website; and, (6) Defendant employs sophisticated third parties who create profiles of customers and potential customers, including their email address and physical location. *Id.* ¶¶ 227-35.

Plaintiffs have accounts with Ulta reflecting their home addresses in Indiana. Plaintiffs made several purchases from Ulta's website that have been delivered to their homes in Indiana and have shopped at Ulta stores in Indiana using their accounts. Plaintiffs also repeatedly clicked on links contained in Ulta's emails from their computers, which were registered to IP addresses in Indiana at all relevant times, or from their smart phones, which were located in Indiana unless Plaintiffs happened to be traveling. *Id.* ¶ 240. These concrete allegations easily satisfy IDCEMA's knowledge standard at the pleading stage. *Washington v. Ulta Salon, Cosmetics & Fragrance, Inc.* ("*Ulta Salon*"), No. 2:25-cv-00284-RLP, 2026 U.S. Dist. LEXIS 43014, at *7-9 (E.D. Wash. Feb. 27, 2026) (hold that nearly identical allegations about Ulta's knowledge of recipient residency were sufficient to survive dismissal, including the same statutory "available upon request" basis, purchase history, account registration, IP tracking, and Ulta's own marketing infrastructure). The knowledge allegations Plaintiffs make here are at least as detailed as those the *Ulta Salon* court found sufficient.

Moreover, Ulta knew, should have known, or had reason to know it sends marketing emails to Indiana residents due to its large presence in the state – with more than twenty physical stores in Indiana – viewed against the high volume of marketing emails it sends to consumers around the country. Compl. ¶ 235. These allegations more than satisfy the pleading standard.

## II. IDCEMA is not preempted by CAN-SPAM.

### A. CAN-SPAM preemption does not apply to state laws barring falsity or deception in email subject lines.

A court's inquiry into the scope of a preemption clause is shaped by "two presumptions." *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 352-53 (4th Cir. 2006) (citation and quotation omitted). First, a court does "not presume that Congress

intends to clear whatever field it enters." *Id.* (citation and quotation omitted). Instead, a court starts from "the basic assumption that Congress did not intend to displace state law," and "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress[.]" *Id.* (citation and quotation omitted). Second, a court addresses preemption issues in accordance with the "oft-repeated comment . . . that '[t]he purpose of Congress is the ultimate touchstone' in every preemption case." *Id*. (alteration in original) (citation omitted). Instead of imposing the narrowest possible construction on preemptive language when read in isolation, a court seeks "a fair understanding of congressional purpose," looking to "the language of the pre-emption statute and the statutory framework surrounding it," while also considering "the structure and purpose of the statute as a whole." *Id*. (citation and quotation omitted). Taking these presumptions into account, CAN-SPAM does not preempt IDCEMA.

CAN-SPAM preempts certain state laws, but its savings clause expressly exempts from preemption any state consumer protection statute that "prohibits falsity or deception in any portion of a commercial electronic mail message[.]" 15 U.S.C. § 7707(b)(1). Specifically, CAN-SPAM § 7707(b)(1) preempts:

> any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, *except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message* or information attached thereto.

(emphasis added.)

"Congress was operating in the vein of tort when it drafted the pre-emption clause's exceptions[.]" *Omega World Travel*, 469 F.3d at 354. Therefore, "it is clear that a state's anti-spam statute is not preempted so long as it deals with falsity or deception in the vein of tort."

*Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 717 (4th Cir. 2015). The Ninth Circuit adopted the same reading. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1062 (9th Cir. 2009) (savings clause applies broadly to state laws targeting "traditionally tortious or wrongful conduct," not merely common-law fraud). Although the Seventh Circuit has not addressed this issue, the reasoning of *Kraft Foods* and *Virtumundo* is persuasive and applicable here. IDCEMA – like Maryland's MCEMA and Washington's CEMA – is a consumer-protection statute in the nature of a tort that prohibits falsity and deception in commercial email.

IDCEMA's text falls squarely into CAN-SPAM's exemption from preemption. IDCEMA § 24-5-22-7(b)(3), (c) prohibits the transmission of email messages that contains false or misleading information in the subject line, while CAN-SPAM prohibits "the transmission to a protected computer of a commercial electronic mail message if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message[.]" 15 U.S.C. § 7704(a)(2). Both statutes are aimed at the same misconduct.

Ulta attempts to avoid this conclusion by urging a restrictive reading of the savings clause, arguing CAN-SPAM preserves only state laws grounded in "traditional tort principles," such as common-law fraud, and that Plaintiffs therefore must plead intent, reliance, damages, or fraud-like particularity to avoid preemption. That argument is inconsistent with CAN-SPAM's text and has already been rejected by every court to address it. *See Virtumundo*, 575 F.3d at 1062; *Vistaprint United States*, 617 F. Supp. 2d at 993-94; *Hypertouch*, 192 Cal. App. 4th at 815–16, 838; *Vineyard Vines*, 2025 U.S. Dist. LEXIS 262073 (holding WCEMA's subject-line provision "falls squarely within this area reserved to the

States" because CAN-SPAM "expressly allows States to prohibit by 'statute, regulation, or rule' either 'falsity or deception' in 'any portion of a commercial electronic mail message or information attached thereto.'"); *Ma v. Nike, Inc.*, No. C25-1235JLR, 2026 U.S. Dist. LEXIS 7539, at *5-7 (W.D. Wash. Jan. 14, 2026) (holding that WCEMA's subject-line provision "falls squarely within" CAN-SPAM's savings clause and rejecting the defendant's argument that the preemption exception is limited to traditional common-law fraud); *Kempf v. Fullbeauty Brands Operations, LLC*, No. C25-1141 TSZ, 2026 U.S. Dist. LEXIS 29632, at *11-13 (W.D. Wash. Feb. 12, 2026); *Jerde v. BYLT LLC*, No. 2:25-cv-01496-JHC, 2026 U.S. Dist. LEXIS 30489 (W.D. Wash. Feb. 13, 2026); *Ulta Salon*, 2026 U.S. Dist. LEXIS 43014, at *10-12 (denying Ulta's motion to dismiss "[b]ecause CEMA's subject-line provision applies only to false or misleading information, it is not preempted by CAN-SPAM").

"The great weight of . . . decisions have agreed that a showing of reliance and damages is not necessary" for a state anti-spam claim to survive preemption. *Wagner v. Spire Vision*, 2014 WL 889483, at *3 (N.D. Cal. Mar. 3, 2014) (collecting cases). In *Vistaprint United States*, the court "decline[d] to restrict the term 'falsity or deception' to encompass only common-law fraud claims" and found the savings clause exempts laws proscribing "falsity or deception" in emails, applied "more broadly than just to common-law fraud claims." *Vistaprint United States*, 617 F. Supp. 2d at 993-94. The court also noted that "because the very terms of [the anti-spam statute] do not require a Plaintiff to plead reliance and damages, there is no basis to dismiss Plaintiff's claim for the failure to plead those elements." *Id.* Importantly, Congress knew how to reference fraud explicitly if it wished to do so. Instead, it preserved a broader category of state regulation aimed at deceptive practices. *Compare* 15 U.S.C. §

7707(b)(1) (savings clause for "falsity or deception") with § 7707(b)(2) (no preemption of "other State laws to the extent that those laws relate to acts of fraud or computer crime").

Ulta relies on *Martin v. CCH, Inc.*, 784 F. Supp. 2d 1000 (N.D. Ill. 2011), but *Martin* is materially distinguishable and does not support preemption here. In *Martin*, the plaintiff alleged that CCH's email subject lines were deceptive because they failed to disclose that opening the emails would activate hidden tracking technology harvesting the recipient's IP address and location data. *Id.* at 1002. Critically, the plaintiff himself conceded the subject lines "accurately tell the recipient that there is an advertisement inside" and they "seem harmless enough on their face." *Id.* at 1006. The *Martin* court found this was, at best, a claim for "incomplete" or "less than comprehensive information" about the technical mechanics of what happened when the email was opened – not a claim the subject line's affirmative representations of fact were false. *Id.* at 1007. The court held such technical omission claims found "no basis in traditional tort theories" and were therefore preempted. *Id.*

The facts here are nothing like *Martin*. Plaintiffs do not allege Ulta failed to disclose hidden technical features of its emails. Plaintiffs allege Ulta's subject lines made affirmative, objectively false representations of fact: that recipients were receiving a "free gift" when no gift was available without a qualifying purchase, and that discounts applied to an "entire purchase" when sweeping exclusions applied. These are claims that the subject lines themselves stated things that were not true – precisely the kind of affirmative falsity that the *Martin* court distinguished from the omission-based claim before it, and precisely the kind of "traditionally tortious or wrongful conduct" the savings clause was designed to preserve. *Id.* at 1005-06. Indeed, *Martin* itself acknowledged that its result turned on the limited, technical nature of the plaintiff's theory, which is clearly distinguishable from the present case.

**B. Plaintiffs Are Not Required to Plead Common-Law Tort Elements or Satisfy Fed. R. Civ. P. 9(b) to Avoid CAN-SPAM Preemption.**

CAN-SPAM's savings clause does not require a plaintiff to plead common-law fraud. CAN-SPAM preserves state laws that prohibit falsity or deception in commercial email; it does not require that such laws mirror common-law tort causes of action or incorporate elements like intent, reliance, or damages. Interpreting CAN-SPAM preemption as Ulta suggests would improperly collapse statutory consumer-protection regimes into common-law tort doctrine and nullify Congress's deliberate choice to preserve state anti-deception statutes.

IDCEMA creates a targeted, statutory prohibition on deceptive subject lines and imposes liability without requiring proof of intent, reliance, or actual damages. That design reflects a legislative judgment that deceptive commercial email is harmful and warrants prophylactic regulation. Courts are not free to graft common-law requirements onto a statute where the legislature chose not to include them.

Ulta's attempt to impose Rule 9(b)'s heightened pleading standard fails for the same reason. Rule 9(b) applies to claims "sounding in fraud." IDCEMA claims do not sound in fraud. *Impulse Mktg. Grp.*, 375 F. Supp. 2d at 1047-48 ("comparison of the elements of RCW § 19.190.020 with the elements of fraud, illustrates that Plaintiff's Complaint does not sound in fraud"). IDCEMA prohibits deceptive conduct and imposes statutory liability without regard to scienter or reliance. Applying Fed. R. Civ. P. 9(b) would directly conflict with IDCEMA's text and remedial purpose.

In *Nike, Inc.*, 2026 U.S. Dist. LEXIS 7539, at *9-10, the court held that even assuming Fed. R. Civ. P. 9(b) applies, a WCEMA plaintiff satisfies it by pleading the "who, what, when, where, and how" of the alleged misconduct – without pleading reliance or actual injury. *Id.* (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Similarly, in

*Fullbeauty Brands Operations*, 2026 U.S. Dist. LEXIS 29632, at *12-13, the court rejected the defendant's argument that the plaintiff was required to plead "materiality," "reliance," "scienter," and "damages" to state a CEMA claim, holding that "CEMA claims do not … sound in fraud" and need not do so to avoid preemption. *See also Ulta Salon*, 2026 U.S. Dist. LEXIS 43014, at *11-12 (rejecting Ulta's Fed. R. Civ. P. 9(b) argument because the words "falsity or deception" in CAN-SPAM's savings clause "indicates Congress intended the CAN-SPAM exception to apply more broadly than claims of fraud").

IDCEMA is no different. Plaintiffs here have alleged the who (Ulta), what (subject lines promising "free gifts" and unqualified discounts that concealed material conditions), when (specific emails received by Named Plaintiffs over multiple years), where (Indiana residents), and how (the subject lines were objectively false or misleading because they omitted purchase requirements and discount exclusions). Nothing more is required.

**C. Plaintiffs have alleged Ulta sent and Plaintiffs received emails with false and materially deceptive subject lines that had the capacity to deceive a reasonable consumer.**

Ulta sent false and materially deceptive email subject lines promising "free gifts" and universal discounts. Compl. ¶¶ 2-11, 33-226. There is no way for Plaintiffs to obtain the free gifts without a minimum qualifying purchase (*id.* ¶¶ 199-203) and the universal discounts contain sweeping exclusions buried in the fine print at the bottom of each email message (*id.* ¶ 211-26). Every consumer would find it material to know the price of goods. Courts that have confronted similar claims under their respective state statutory schemes determined these claims were not preempted by the CAN-SPAM Act. *Hypertouch*, 192 Cal. App. 4th at 815-16 and 838 (holding that CAN-SPAM did not preempt anti-spam law claims "where the subject line is misleading about the contents of the email" because the consumer alleged receipt of

emails that contained subject lines with false statements regarding free gifts that required a minimum qualifying purchase); *Asis Internet Services v. Subscriberbase Inc*., 2010 WL 1267763 at *13 (N.D. Cal. Apr. 1, 2010) (finding the Plaintiffs' claims under anti-spam law about misleading subject lines purporting to offer "free gifts" could be inherently deceptive and therefore were not preempted by CAN-SPAM); *Vineyard Vines*, 2025 U.S. Dist. LEXIS 262073 (holding CAN-SPAM did not preempt anti-spam claim that universal discount subject line stating "30% Off EVERYTHING" did not apply universally).

**D. Conflict preemption does not apply because IDCEMA operates in harmony with CAN-SPAM's objectives and fits within its express saving clause.**

Ulta's conflict preemption argument fails because Plaintiffs' IDCEMA claims fit comfortably within CAN-SPAM's saving clause, operate in harmony with Congress's objectives, and mirror the type of tort-style deception claims that courts have repeatedly held are not preempted. The Supreme Court has stated that "state law is pre-empted to the extent that it actually conflicts with federal law" and courts have only found preemption "where it is impossible for a private party to comply with both state and federal requirements … or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) (internal quotations and citations omitted). CAN-SPAM contains an express preemption clause and saving clause, signaling Congress already calibrated how far state law may go – conflict preemption should not be used to re-expand preemption beyond what Congress specified.

CAN-SPAM preempts state statutes "that expressly regulate[] the use of electronic mail to send commercial messages, except to the extent that any such statute … prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). The Fourth and Ninth Circuit agree state-law

claims survive if they target "falsity or deception" "in the vein of tort," not mere technical or immaterial errors. *Omega World Travel*, 469 F.3d at 354-56; *Virtumundo, Inc.*, 575 F.3d at 1057-66. Multiple courts have likewise recognized that state anti-spam statutes "regulate false and deceptive trade practices" and are "in the nature of a tort." *MaryCLE, LLC v. First Choice Internet, Inc.*, 166 Md. App. 481, 486 (2006). IDCEMA falls within CAN-SPAM's saving clause because it is a tort-like statute that "regulate[s] falsity and deception," and therefore is "not preempted." *See Kraft Foods*, 777 F.3d at 716-18.

**1. Compliance with Both IDCEMA and CAN-SPAM is Not Impossible.**

Ulta argues IDCEMA creates an impossible conflict because it imposes liability beyond CAN-SPAM's prohibition on materially misleading headers. This mischaracterizes both statutes. CAN-SPAM prohibits subject lines "likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." 15 U.S.C. § 7704(a)(2). IDCEMA's subject-line provision targets the same misconduct – false or misleading representations about material facts – through a state-law remedy Congress expressly preserved. A sender who avoids sending emails with materially deceptive subject lines easily complies with both statutes. Nothing in IDCEMA requires conduct CAN-SPAM forbids, nor does IDCEMA penalize conduct CAN-SPAM permits. Compliance with both laws simply requires truthful marketing.

**2. IDCEMA is Not an Obstacle to CAN-SPAM's Objectives.**

IDCEMA does not frustrate Congress's objectives. Congress expressly found "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages" (15 U.S.C. § 7701(a)(8)) and "senders of commercial electronic mail should not

mislead recipients as to the … content of such mail[.]" *Id.* at § 7701(b)(2). CAN-SPAM was designed to allow complementary state regulation of deceptive emails to further this purpose. IDCEMA advances these goals by targeting precisely the deceptive subject lines that CAN-SPAM condemns, without burdening non-deceptive communications. IDCEMA, as applied here, advances – not obstructs – CAN-SPAM's purposes. CAN-SPAM itself prohibits subject lines "likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." 15 U.S.C. § 7704(a)(2). Plaintiffs' claim targets that same deception. IDCEMA merely provides a state-law remedy.

Far from reviving the "patchwork" of inconsistent regulations Congress rejected, IDCEMA is part of the uniform rule both *Omega World Travel* and *Virtumundo* describe: non-deceptive technical irregularities are governed exclusively by CAN-SPAM, but traditional misrepresentation remains subject to state tort-style regulation. Differences in scienter language, residency triggers, or remedies do not create an obstacle. Congress did not require perfect uniformity; it preserved state authority to regulate deception. Allowing IDCEMA to reach deceptive "free gift" false universal discount subject lines does not penalize conduct CAN-SPAM permits – it reinforces the very anti-deception principal CAN-SPAM protects.

Ulta asks the Court to hold that even when confined to deceptive subject lines, IDCEMA stands as an obstacle to CAN-SPAM's purposes. ECF #35 at 18. But Congress chose to preserve state statutes that "prohibit falsity or deception," and the Fourth and Ninth Circuits held analogous state anti-spam statutes fall within that category when they address tort-style deception. 15 U.S.C. § 7707(b)(1); *Omega World Travel*, 469 F.3d at 353-56; *Kraft Foods*, 777 F.3d at 716-18; *Virtumundo*, 575 F.3d at 1057–66. Using conflict preemption to

extinguish the state laws that Congress singled out to be saved would invert the statutory structure and disregard that express policy choice.

**III. Plaintiffs' Complaint satisfies Fed. R. Civ. P. 8's pleading requirements.**

Ulta's Fed. R. Civ. P. Rule 8 argument mischaracterizes the Complaint and applies a level of granularity Fed. R. Civ. P. 8 does not require. Ulta contends Plaintiffs "list pages of email subject lines" but fail to allege "concrete facts" tying any subject line to deception, reliance, or injury. Those statements are incorrect on the face of the pleadings.

Fed. R. Civ. P. 8 requires a "short and plain statement" showing entitlement to relief – not evidentiary detail or proof. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56. At the pleading stage, the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in Plaintiffs' favor. *Allison*, 412 F. Supp. 3d at 992-993, *citing Bielanski*, 550 F.3d at 633. Plaintiffs easily meet that standard by alleging: (1) the challenged "Free Gift Emails" use subject lines representing offers as "free gifts" while omitting required conditions such as minimum purchase requirements, and the challenged "Percentage Discount Emails" use subject lines promising unqualified discounts off an "entire purchase" while concealing exclusions that materially limit the scope of any discount (Compl. ¶¶ 2-11); (2) the omitted conditions are material and designed to increase consumer engagement and influence purchasing decisions (*id.* ¶ 5); and, (3) Named Plaintiffs – Indiana residents – received these emails repeatedly, in large volume, and want truthful promotional emails but cannot discern which Ulta emails are truthful versus deceptive. *Id.* ¶¶ 236-46.

Most notably, the Complaint specifies what Ulta claims is missing: affirmative misrepresentations and concealment of qualifying conditions, and why the subject lines are false and misleading. Plaintiffs allege Ulta's "free gift" subject lines "imply that one or more

'free gifts' are being provided unconditionally and at no cost to the recipient," but "[u]pon opening the email … the body reveals that the 'free gifts' require a qualifying minimum purchase[.]" *Id.* ¶¶ 199-200. Plaintiffs pled the falsity theory: because "the recipient is required to spend a certain dollar amount before being entitled to a 'free' gift," a subject line implying an unconditional "free gift" is false. *Id.* ¶ 202. Likewise, Plaintiffs plead that subject lines promising a percentage discount off an "entire purchase" are false because they omit material exclusions that make the promised universal discount unobtainable for a substantial portion of any consumer's purchase. *Id.* ¶¶ 223-26. That is exactly the kind of concrete, commonsense deception allegation Fed. R. Civ. P. 8 contemplates – and it directly contradicts Ulta's assertion that Plaintiffs fail to allege concealed conditions.

Plaintiffs are not offering bare labels; they identify the marketing theme ("free gifts" and unqualified percentage discounts), explain why the subject lines are misleading (omission of minimum purchase and other restrictions), and provide representative examples of the subject lines themselves. Compl. ¶¶ 3-11, 33-226. Ulta also argues that the Complaint does not tie subject lines to Named Plaintiffs' "precise experiences." ECF #35 at 3. But Plaintiffs allege that each Named Plaintiff is an Indiana resident, each received Ulta's marketing emails for years, each received hundreds of emails, and each received the misleading emails described and many more like them. Compl. ¶¶ 236-246. That is more than sufficient notice pleading as recently found in *Ulta Salon*, 2026 U.S. Dist. LEXIS 43014, at *4-5, where the court denied Ulta's identical Fed. R. Civ. P. 8 challenge where plaintiffs identified specific emails they received with false or misleading subject lines and explained why the subject lines were false – the same showing Plaintiffs make here.

## IV. IDCEMA Is Constitutional Under the Dormant Commerce Clause.

To the extent Ulta raises a dormant Commerce Clause challenge to IDCEMA, that challenge is meritless and has never found a receptive audience. The United States Supreme Court has cautioned to exercise "extreme caution" before invalidating state statutes under the dormant Commerce Clause. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 390 (2023) (internal quotation marks omitted). Preventing enforcement of a democratically enacted state law on dormant Commerce Clause grounds is a matter of "extreme delicacy," appropriate only "where the infraction is clear." *Id.* (quoting *Conway v. Taylor's Ex'r*, 66 U.S. 603, 634 (1862)). The "primary purpose of the dormant Commerce Clause" is to prohibit statutes that provide benefits to in-state economic interests while burdening out-of-state ones. *Ass'n des Éleveurs de Canards et d'Oies du Québec v. Harris*, 729 F.3d 937, 947 (9th Cir. 2013) (cleaned up).

Courts have consistently upheld anti-spam statutes against dormant Commerce Clause challenges. The Washington Supreme Court expressly "h[e]ld that [Washington's anti-spam statute] does not violate the dormant Commerce Clause." *State v. Heckel*, 143 Wash. 2d 824, 840, 24 P.3d 404, 413 (Wash. 2001). The same result followed in federal court. *Impulse Mktg. Grp.*, 375 F. Supp. 2d at 1049-50. Courts have repeatedly held that requiring truthful marketing is not a constitutionally cognizable burden on interstate commerce. *Black Star Farms LLC v. Oliver*, 600 F.3d 1225, 1231-32 (9th Cir. 2010); *MaryCLE*, 890 A.2d at 842 ("[w]hen the only burden [Maryland's anti-spam law] imposes is that of sending truthful and non-deceptive email, that [a defendant] considers [the statute's] requirements inconvenient and even impractical does not mean that statute violates the Commerce Clause").

Ulta's dormant Commerce Clause arguments have already been considered and rejected in detail in *Fullbeauty Brands Operations*, 2026 U.S. Dist. LEXIS 29632, at *13-20,

which analyzed all three strands of dormant Commerce Clause doctrine – antidiscrimination, extraterritoriality, and *Pike* balancing – and rejected each in turn. The court held that WCEMA applies evenhandedly to in-state and out-of-state businesses, does not control commerce outside the state, and imposes at most the minimal burden of truthful marketing, which does not discriminate between in-state and out-of-state firms. *Id.* at *15-20 (discussing *Nat'l Pork Producers Council*, 598 U.S. at 371-76).[1] The same analysis applies with equal force to IDCEMA, which is materially indistinguishable from WCEMA in structure and purpose. Ulta's dormant Commerce Clause challenge must fail.

IDCEMA is a valid exercise of Indiana's police powers. It applies evenhandedly to misleading commercial email messages sent to Indiana residents without regard to where the sender is located. It does not discriminate against out-of-state interests or impose protectionist measures of any kind. IDCEMA imposes at most a minimal burden – the burden of truthful marketing – that is far outweighed by its substantial local benefits: protecting Indiana consumers from deceptive email practices. Any dormant Commerce Clause challenge fails.

## V. CONCLUSION

Plaintiffs have sufficiently alleged Ulta sent false or misleading email subject lines to individuals that Ulta knew or had reason to know were Indiana residents in violation of IDCEMA. The Complaint satisfies Fed. R. Civ. P. 8, IDCEMA is not preempted by CAN-SPAM, and any dormant Commerce Clause challenge fails as a matter of law. For the reasons stated herein, Plaintiffs request that this Court deny the Motion to Dismiss. In the alternative, if the Court identifies any pleading deficiency, Plaintiffs respectfully request leave to amend.

---

[1] The same three-part analysis was applied to reject Ulta's identical dormant Commerce Clause challenge under WCEMA. *Ulta Salon*, 2026 U.S. Dist. LEXIS 43014, *12-16.

Respectfully submitted:

*/s/ William N. Riley*

William N. Riley (14941-49)
Russell B. Cate (27056-29)
Sundeep Singh (36591-29)
RILEYCATE, LLC
11 Municipal Drive, Suite 320
Fishers, IN 46038
Telephone: (317) 588-2866
Fax: (317) 458-1785
wriley@rileycate.com
rcate@rileycate.com
ssingh@rileycate.com

Cory L. Zajdel (admitted S.D. In.)
David M. Trojanowski (admitted S.D. In.)
Z LAW, LLC
2345 York Road, Suite B-13
Timonium, Maryland 21093
(443) 213-1977
clz@zlawmaryland.com
dmt@zlawmaryland.com

*Attorneys for Named Plaintiffs*

## Certificate of Service

I hereby certify that on the 17th day of March, 2026, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ William N. Riley*
William N. Riley