**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| COLE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ULTA SALON, COSMETICS & FRAGRANCE, INC., | ) | 1:25-cv-02521-RLY-MJD |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**INTERVENORS BRIEF IN OPPOSITION TO DEFENDANT'S CONSTITUTIONAL CHALLENGE**

Defendant's constitutional challenge should be denied. The Indiana Deceptive Commerce Electronic Mail Act ("IDCEMA"), specifically Indiana Code § 24-5-22-7(b), plainly meets the express exceptions to preemption under 5 U.S.C. § 7707(b)(2) because it specifically targets fraud and deception. IDCEMA is also copacetic with the Dormant Commerce Clause because it does not discriminate against or unduly burden interstate commerce, nor does it impose any burden that is clearly excessive in relation to the local benefits.

## BACKGROUND

## I. RELEVANT FACTS

On November 24, 2025, Plaintiffs filed their Class Action Complaint in Monroe County Circuit Court. Plaintiffs' class action lawsuit was removed from state court on December 12, 2025. Dkt. 1. Plaintiffs allege that they received marketing emails from Defendant. Dkt. 1-2 ¶ 2. Specifically, that Ulta sent emails with subject lines falsely representing offers as "free gifts" without disclosing significant restrictions and requirements. Dkt. 1-2 ¶¶ 3-4. Plaintiffs further

allege that Defendants knowingly omitted those details to entice consumers to open emails. Dkt. 1-2 ¶ 5. In their complaint, Plaintiffs allege the Defendant violated Indiana Code § 24-5-22-7(b)(3). Dkt. 1-2 ¶ 12.

On January 16, 2026, Defendant, the sender of the messages alleged to be in violation of IDCEMA, filed its Motion to Dismiss. Dkt. 34. In their supporting memo, Defendant included a constitutional challenge alleging that IDCEMA is expressly preempted under 5 U.S.C. § 7707(b)(1) and is unconstitutional under the dormant Commerce Clause. Dkt. 35, pp. 8-21.The Court subsequently certified that challenge pursuant to 28 U.S.C. § 2403(b), permitted Indiana to intervene for presentation of evidence and argument on the question of constitutionality, and set a deadline of March 17, 2026, for the State to respond. Dkt. 44.

## II. APPLICABLE LAW

The Federal CAN-SPAM Act ("CAN-SPAM"), codified at 15 USC § 7701 et seq., sets national standards for emails and messages from commercial entities. In relevant part, "[t]his Act supersedes any statute, regulation or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail…except to the extent…[that] the rule prohibits falsity or deception in any portion of a commercial email message". 15 U.S.C. § 7707(b)(1). In essence, this statute restricts any state from promulgating similar standards to CAN-SPAM unless it specifically targets fraud or deception. Furthermore, CAN-SPAM does not preempt the applicability of state laws that are not specifically related to electronic mail, including "trespass, contract, or tort law." 15 U.S.C. § 7707(b)(2).

In *Martin*, the Court for the Northern District of Illinois (analyzing an Illinois statute referred to here as "IEMA") found that "falsity and deception" (as found in 15 U.S.C. § 7707(b)(1)) referred to "traditional tortious conduct." *Martin v. CCH, Inc.*, 784 F.Supp.2d 1000,

1005-1006 (N.D. Ill. 2011) (citing *Omega World Travel*, *Inc. v. Mummographics, Inc.*, 469 F.3d 348 (4th Cir. 2006)). Rephrased, the violative conduct must be based on "traditional tort theories," not "mere technical and immaterial allegations of header deficiencies." *Martin*, 784 F.Supp.2d 1006 (citing *Gordon v. Virtumundo*, 575 F.3d 1040 (9th Cir. 2009)). The allegations in *Martin* concerned emails labeled to imply they were from a person with whom the recipient has a preexisting relationship. *Id*. The Court held that the CAN-SPAM act preempts IEMA to the extent that the IEMA requires specific labeling in the subject line of emails. *Id*.

IDCEMA, codified at Indiana Code 24-5-22 et seq., is Indiana's law that protects residents from misleading commercial emails. IDCEMA prohibits initiating or assisting in the transmission of a commercial electronic mail message that:

1. Uses a third party's internet domain name without permission of the third party;
2. Otherwise misrepresents or obscures any information in identifying the point of origin or the transmission path of the commercial electronic mail passage; or
3. Contains false or misleading information in the subject line.

Ind. Code § 24-5-22-7(b). Subsection (b) is limited to commercial electronic mail messages sent "from a computer located in Indiana" or to an email address that the sender knows or has reason to know is held by an Indiana resident. Ind. Code § 24-5-22-7(c). A person who receives a commercial electronic mail message has a private right of action to litigate violations of Indiana Code § 24-5-22-7. Ind. Code § 24-5-22-10(a).

## ARGUMENT

### I. Indiana Code § 24-5-22-7(b)(3) is expressly exempted from preemption under 15 U.S.C. § 7707(b)(1).

Article VI, Clause 2 of the U.S Constitution, or the Supremacy clause, states in relevant part, "This Constitution…under the authority of the United States, shall be the supreme law of

the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." U.S. Const. art. 6, § 2, cl. 2. The Supremacy Clause stands for the general rule that state law may be displaced by federal law. *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019). However, preemption is only appropriate where there is a "'constitutional text or a federal statute' that does the displacing or conflicts with state law." *Id* (citing *Puerto Rico Dept. of Consumer Affairs v. ISLA Petroleum Corp.*, 485 U.S. 495 (1988).

While CAN-SPAM does expressly preempt state regulation of commercial email, it provides an exception "to the extent…the rule prohibits falsity or deception in any portion of a commercial email message." 15 USC § 7707(b)(1). The state law provision prohibiting false or misleading subject lines falls within this clause as traditional fraud regulation because it is based upon the traditional tort concept of misrepresentations. *See Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006). Indiana Code § 24-5-22-7(b) does not "sweep up errors" but is instead plainly worded to prevent subject lines that deceive the recipient with false or misleading language, which fall squarely within tortious conduct. *Id*.

Making a misrepresentation of fact for the purpose of inducing a customer to act is generally subject to liability under the doctrine of fraudulent misrepresentation. Restatement (Second) of Contracts § 525 (Am. L. Inst. 1977). Additionally, the tort of negligent misrepresentation generally requires the supply of "false information." Restatement (Second) of Contracts § 552 (Am. L. Inst. 1977). Indiana Code § 24-5-22-7(b) explicitly prohibits the transmission of messages that contain false or misleading information that misrepresents the actual message of the communication. The statute outlines conduct that closely hews to what is

required in traditionally tortious conduct. Consequently, IDCEMA is excepted from express preemption under CAN-SPAM.

## II. IDCEMA represents a constitutional exercise of state power.

The Commerce Clause grants Congress the power to regulate commerce among the States. U.S. Const. Art. I, § 8, cl. 3. In addition to granting Congress this power, the Courts have further recognized that the clause also implicitly restrains the authority of individual states to regulate interstate commerce. *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Management Authority*, 550 U.S. 330, 338 (2007). Rephrased, the dormant Commerce Clause prohibits state actions that discriminate against or unduly burden interstate commerce, even in the absence of federal legislation. *Alliant Energy Corp. v. Bie*, 330 F.3d 904, 911 (7th Cir. 2003).

State statutes come before the court with a presumption of constitutionality. *Davies Warehouse Co. v. Bowles,* 321 U.S. 144, 153 (1944). The Court begins by first considering whether the state law is discriminatory towards interstate commerce on its face. *United Haulers Ass'n, Inc.*, 550 U.S. at 338. If the law is not discriminatory on its face, the Court will then assess whether the law may be invalid because it "bear[s] more heavily on interstate commerce than on local commerce." *Park Pet Shop, Inc.,* 872 F.3d 495, 501 (7th Cir. 2017). If the law is not facially or effectively discriminatory, and it regulates to effectuate a legitimate local public interest and its effects on interstate commerce are only incidental, the statute will be upheld unless the burden it imposes on interstate commerce is clearly excessive in relation to the local benefits where a statute. *Pike v. Bruce Church Inc.* 397 U.S 137, 142 (1970).

### A. IDCEMA is not discriminatory against interstate commerce on its face.

State laws that "explicitly discriminate against interstate commerce" are considered facially discriminatory under the Commerce Clause. *Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495, 501 (7th Cir. 2017). "Explicit[]" discrimination occurs when a statute makes a

distinction "on its face" between persons or entities based on whether they are located in-state or out-of-state. *Baude v. Heath*, 538 F.3d 608, 611 (7th Cir. 2008). Presence requirements do not necessarily create this in-state versus out-of-state distinction where local entities are just as capable of fulfilling the requirement as are out-of-state entities. For instance, a city ordinance favoring "occupant homeowners" over "non-occupant homeowners" did not facially discriminate under the Commerce Clause. *Regan v. City of Hammond*, 934 F.3d 700, 704 (7th Cir. 2019).

Section 24-5-22-7 does not discriminate against interstate commerce. There is no additional requirement placed on out-of-state businesses. Every requirement of the statute expressly applies to in-state businesses. Furthermore, Defendant's claim that IDCEMA requires out-of-state competition to "build out Indiana specific segmentation" is misleading. The state statute at issue prohibits electronic communications that are "false or misleading." Ind. Code § 24-5-22-7(b). Not only does this standard apply to both in-state and out-of-state entities, but it also applies standards found in traditional tort law that will likely apply in whatever American jurisdictions Defendant seeks to do business. It is problematic if Defendant needs to build out segmentation custom to Indiana residents simply to avoid sending false or misleading emails. Plainly, the statute does not discriminate against out-of-state commerce simply by requiring entities to comport with notions of conduct deeply rooted in widely known tort law concepts.

**B. IDCEMA does not effectively discriminate against interstate commerce.**

Where a state statute does not discriminate against interstate commerce on its face, it may nonetheless be invalid where it "bear[s] more heavily on interstate commerce than on local commerce." *Park Pet Shop, Inc.*, 872 F.3d at 501. When the statute's effect on interstate commerce is "powerful," and thus "act[s] as an embargo on interstate commerce without hindering intrastate sales," courts will treat the statute as though it discriminates in its terms. *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1131 (7th Cir. 1995). Here,

IDCEMA does not discriminate in in its effects or purpose so as to act as an "embargo," nor does it "build up … domestic commerce" at the cost of burdening out-of-state commerce. *Nat'l Pork Producers Council*, 598 U.S. at 369. Here, in-state and out-of-state senders are subject to the same requirements under IDCEMA.

Defendant argues that IDCEMA places requirements on senders outside of Indiana who send messages to recipients outside of Indiana. Dkt. 35, p. 22. Defendant concedes that the Court has declined to find a per se rule against extraterritoriality. Dkt. 35, p. 20. As the Court noted in *Nat'l Pork*, the concept of extraterritoriality was addressed in a specific context where the challenged statute "prevent[ed out-of-state firms] from undertaking competitive pricing" or "deprive[d] businesses and consumers in other States of 'whatever competitive advantages they may possess.'" 598 U.S. at 374 (citing *Healy v. Beer Institute, Inc.,* 491 U.S. 324, 338 (2023) (citations omitted). Here, IDCEMA does not levy any additional cost on out-of-state businesses. Indeed, the only issue that Defendant raises is that IDCEMA requires them to abstain from "false or misleading" content in their commercial messages.

Regardless, Defendant's argument misinterprets the statute. IDCEMA limits its effect to messages sent from Indiana or to recipient electronic mail addresses "held by a resident of Indiana." Ind. Code § 24-5-22-7(c). Liability for sending messages under IDCEMA is further limited to circumstances in which the sender knows or has reason to know the recipient is a resident of Indiana. *Id.* If Defendant has no reason to know where the recipient is a resident of Indiana, IDCEMA does not impose liability.

**C. IDCEMA does not unduly burden interstate commerce.**

Where a statute is neither facially discriminatory nor imposes such a strong burden on interstate commerce to effectively create an embargo, courts will look to the incidental effects IDCEMA may have. Under the test articulated in *Pike*, a statute with "incidental" effects on

interstate commerce is valid unless the "burden imposed on such commerce is clearly excessive in relation to the putative local benefits." 397 U.S. at 142. Here, Defendants have not argued that IDCEMA fails the *Pike* balancing test. Regardless, IDCEMA would survive even if such an argument was advanced. Any incidental effects of IDCEMA on interstate commerce are outweighed by Indiana's legitimate interest in protecting Indiana residents from false or misleading marketing in electronic mail messages.

The Supreme Court is "wary" of invalidating state laws under *Pike* where effects on interstate commerce are only incidental. *Baude v. Heath,* 538 F.3d 608, 611 (7th Cir. 2008). IDCEMA does not present the type of extraordinary burden on interstate commerce that would justify its invalidation here. The State of Indiana has an interest in protecting its residents from false or misleading messages because residents affected by misleading marketing are likely to have spent money on products or services that they do not want. Further, misleading consumers through marketing sows distrust and reduces consumer confidence, dampens both in-state and out-of-state commerce. IDCEMA provides some recourse for individuals through its private cause of action. This is an option for private individuals which CAN-SPAM does not provide.

**CONCLUSION**

Defendant's constitutional challenge should be denied because IDCEMA does not violate the Constitution. The statute is not preempted because it is expressly excepted from preemption under CAN-SPAM and is not discriminatory against interstate commerce. Consequently, Defendant's argument for dismissal, insofar as it relies upon the argument that IDCEMA is unconstitutional, should be disregarded.

Respectfully submitted,

THEODORE E. ROKITA
INDIANA ATTORNEY GENERAL
ATTORNEY NO. 18857-49

Dated: March 17, 2026 By: */s/ John Oberdorf*
John Oberdorf
Deputy Attorney General
Attorney No. 37951-49

OFFICE OF ATTORNEY GENERAL TODD ROKITA
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204-2770
Telephone: 317-232-6217 (Oberdorf)
Facsimile: (317) 232-7979
E-mail: John.Oberdorf@atg.in.gov