UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ASHLEY JOHNSON and ALEXIS BRIMHALL, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:25-cv-02521-JRO-MJD |
| ULTA SALON, COSMETICS & FRAGRANCE, INC., | ) | |
| Defendant. | ) | |

**ORDER ON MOTION TO DISMISS**

Plaintiffs Ashley Johnson and Alexis Brimhall, on their own behalf and on behalf of those similarly situated,[1] filed this lawsuit under the Indiana Deceptive Commercial Electronic Mail Act ("IDCEMA"), Ind. Code § 24-5-22-1 *et seq.*, contending that Defendant Ulta Salon, Cosmetic & Fragrance, Inc. ("Ulta") violated that statute by sending marketing emails referencing "free gifts" and "percentage discounts" associated with certain promotions.

Ulta moves to dismiss under Rule 12(b)(6), dkt. 34, arguing that Plaintiffs failed to comply with Rule 8 pleading standards and failed to state an IDCEMA claim. Ulta also argues that the IDCEMA claim is preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM"), 15

[1] Plaintiffs Jill Reisinger, Kayla Slachta, Misty Grebel, and Lisa Cole have voluntarily dismissed their claims. Dkts. 84, 88, 95, & 98. The motion to dismiss is **DENIED as moot** as to these plaintiffs.

U.S.C. §§ 7701–13, and is unconstitutional under the Dormant Commerce Clause. Ulta's motion, dkt. [34], is **GRANTED in part** and **DENIED in part**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court takes all well-pled allegations as true and draws reasonable inferences in the nonmoving party's favor but will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

### A. The Parties

Ulta is a Delaware corporation that sells cosmetic products online and at about twenty physical stores in Indiana. Dkt. 1–2 ¶¶ 21–22. It also sends marketing emails to Indiana residents. *Id.* ¶ 21. Plaintiffs received Ulta's marketing emails. *Id.* ¶ 238. They are Indiana residents who have created Ulta customer accounts, made purchases through Ulta's website, and provided Ulta with billing and shipping addresses reflecting their Indiana residency. *Id.* ¶¶ 16; 18; 236–40. Plaintiffs bring this action as a class action on behalf of persons similarly situated who also received Ulta's emails. *Id.* ¶ 14.

### B. The Marketing Emails

From approximately November 2023 to August 2025, Ulta sent marketing emails to Plaintiffs with subject lines stating that "free" gifts and percentage discounts were available to the recipient of the email. Dkt. 1-1 ¶¶ 12, 33–198, 212–221. The body of these emails explains, however, that certain conditions must be satisfied for the recipient to receive their gift or discount. *Id.* ¶¶ 32, 211. For example, the subject header of one email states that there are "SO MANY

FREE GIFTS INSIDE," but the message of the email recites preconditions, such as a minimum dollar purchase requirement. *Id.* ¶¶ 56, 200–203. Similarly, the percentage discount emails include subject lines such as "Don't miss 10% off your purchase," but the message of the email includes fine print that excludes particular brands or categories from eligibility for the discount. *Id.* ¶¶ 211–226. In the complaint, Plaintiffs quote the subject lines of 166 free gift emails and 10 discount emails. *Id.* ¶¶ 33–198, 212–221.

### C. Procedural History

Plaintiffs filed this class action lawsuit in the Monroe County Circuit Court (Cause No. 53C06-2511-CT-003260), bringing a claim under the IDCEMA, Ind. Code § 24-5-22-1 *et seq.* Dkt. 1-2 at 35–37. They appear to bring a civil conspiracy claim as well, alleging that Ulta "has initiated (or conspired to initiate) the transmission of" emails with "false or misleading subject lines." *Id.* ¶ 29; *see also id.* ¶¶ 243, 249.b., 252. Ulta removed the case to this Court under the diversity jurisdiction statute and the Class Action Fairness Act on December 12, 2025. Dkt. 1; *see* 28 U.S.C. § 1332; 28 U.S.C. §§ 1441, 1446, 1453. It now seeks dismissal. The State of Indiana also intervened for the limited purpose of filing a response in opposition to Ulta's motion. Dkt. 62.

## II. STATUTORY BACKGROUND

### A. The IDCEMA

The Indiana General Assembly passed the IDCEMA in 2003, and then Governor Frank O'Bannon signed it into law shortly thereafter. Ind. Pub. L. 36-2003. There is a dearth of case law discussing its meaning and scope.

The IDCEMA provides "a person who receives [a] commercial electronic mail message" with a right of action "against a person who initiates or assists the transmission of a commercial electronic mail message" in violation of one of the IDCEMA's several prohibitions. Ind. Code § 24-5-22-10. The relevant prohibition for this case is sending an email

- "to an electronic mail address that the sender: (A) knows; or (B) has reason to know; is held by a resident of Indiana," and
- that "contains *false or misleading information in the subject line*."

Ind. Code § 24-5-22-7(b)(3), (c)(2) (emphasis added). "[A] person knows that the intended recipient of a commercial electronic mail message is an Indiana resident if that information is available, upon request, from the registrant of the Internet domain name contained in the recipient's electronic mail address." Ind. Code § 24-5-22-7(a). The statute defines "commercial electronic mail message" as "an electronic mail message sent to promote the sale or lease of real property, goods, or services." Ind. Code § 24-5-22-2.

For damages, the statute does not require plaintiffs to prove actual injury. They are "entitled to presumptive damages of five hundred dollars ($500) for each commercial electronic mail message that violates this chapter and is sent by the defendant." Ind. Code § 24-5-22-10(d)(2).

**B. The CAN-SPAM Act**

A few months after Indiana adopted the IDCEMA, Congress passed the CAN-SPAM Act in response to the rise of unsolicited commercial email and the proliferation of disparate state statutes addressing the issue, like the IDCEMA.

15 U.S.C. § 7707(b)(1). Congress found "[m]any States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements." 15 U.S.C. § 7701(a)(11). Congress also found that "these disparate statues" "do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail . . . ." *Id.*

The CAN-SPAM Act established nationwide standards for the transmission of "commercial electronic mail messages," which is defined as "any electronic mail message the primary purpose of which is the commercial advertisement or promotion of a commercial product or service (including content on an Internet website operated for a commercial purpose)." 15 U.S.C. § 7702(2)(A). One of these standards applies to email subject headings:

> It is unlawful for any person to initiate the transmission to a protected computer of a commercial electronic mail message if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a *subject heading of the message would be likely to mislead a recipient*, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message . . . .

15 U.S.C. § 7704(a)(2) (emphasis added). The Act also provides a cause of action for the Federal Trade Commission, federal agencies, and state attorneys general on behalf of citizens or internet access service providers. 15 U.S.C. § 7706. Notably, the CAN-SPAM Act does not provide a cause of action for private citizens except for internet service providers who allege harm. *See id.*

CAN-SPAM contains an express Preemption Clause, stating that the statute "supersedes any statute, regulation, or rule of a State . . . that expressly regulates the use of electronic mail to send commercial messages," 15 U.S.C. § 7707(b)(1), subject to a narrow Savings Clause, which says "*except* to the extent that any such statute, regulation, or rule prohibits *falsity or deception* in any portion of a commercial electronic mail message or information attached thereto," *id.* (emphasis added). The parties dispute the meaning of the Savings Clause. CAN-SPAM separately excludes from preemption "State laws that are not specific to electronic mail, including . . . tort law; or State laws to the extent that those laws relate to acts of fraud . . . ." *Id.* § 7707(b)(2).

**III. LEGAL STANDARD**

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A plaintiff may defeat a motion to dismiss filed pursuant to Rule 12(b)(6) if the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a plausible claim "must allege enough details about the subject-matter of the case to present a story that holds together," *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (cleaned up), "but it need not supply

the specifics required at the summary-judgment stage," *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

## IV. DISCUSSION

Plaintiffs bring this action under the IDCEMA, Ind. Code § 24-5-22-1, *et seq.*, seeking damages for receiving emails from Ulta with subject lines that they say deceptively promised free or discounted merchandise. Ulta moves to dismiss this claim, arguing that it is not well-pled, fails to state a claim, is preempted by CAN-SPAM, and violates the Dormant Commerce Clause.

### A. Rule 8

Ulta argues first that Plaintiffs fail to meet Rule 8 pleading requirements as they merely recite the IDCEMA Section 7(b)(3) elements and offer conclusory allegations of purported violations. Dkt. 35 at 4–5. The Court disagrees.

Plaintiffs' complaint identifies hundreds of emails sent by Ulta to Indiana residents that exemplify the basis for Plaintiffs' claim. *See* dkt. 1-2 ¶¶ 33–221. If these exemplars do not speak for themselves, Plaintiffs may rely upon the Court to connect the factual dots so long as all the dots are there. At this stage in the proceedings, Plaintiffs are not required under Rule 8 to set forth every detail of their claim. Drawing all reasonable inferences in Plaintiffs' favor, the "short and plain statement" requirement of Rule 8 is clearly met.

**B. IDCEMA Section 7(b)(3)**

Next, Ulta argues that Plaintiffs fail to state a claim under IDCEMA Section 7(b)(3) because Plaintiffs do not sufficiently allege two of the elements of the claim: that Ulta knew or had reason to know Plaintiffs are Indiana residents and that any subject line contained false or misleading information. Dkt. 35 at 6–10.

As to the first contested element, Plaintiffs are Indiana residents who allege that they received Ulta's commercial emails while they were in Indiana. Dkt. 1-2 ¶¶ 16; 18; 236–238. Plaintiffs further allege that Ulta knew that Plaintiffs were Indiana residents because Plaintiffs have accounts with Ulta that reflect their home addresses in Indiana. *Id.* ¶ 240. Putting two and two together, the complaint plausibly alleges Ulta knew that Plaintiffs were Indiana residents.

As to the second contested element, Plaintiffs' complaint lists hundreds of emails from Ulta that Plaintiffs allege could fall within the plain and ordinary meaning of "contains false or misleading information in the subject line." *Id.* ¶¶ 33–198, 212–221. The parties dispute, however, whether a message to which a subject line is attached is relevant to whether the subject line itself is "false or misleading." Plaintiffs argue that Section 7(b)(3) of the IDCEMA provides relief for plaintiffs who receive emails with *subject lines* that are "false or misleading," without any further consideration of the email message that may qualify or cure the meaning of the subject line. Dkt. 59 at 11. Ulta argues the "IDCEMA regulates a 'commercial electronic mail message' as a whole . . . and Section 7(b)(3)'s reference to information 'in the subject line' does not create a standalone

disclosure obligation for subject lines." Dkt. 73 at 5 (citation omitted). Ulta has the better argument.

Under Indiana law, "[i]f a statute is clear and unambiguous, [courts] . . . simply require that words and phrases be taken in their plain, ordinary, and usual sense. Indeed, clear and unambiguous statutes leave no room for judicial construction." *KS&E Sports v. Runnels*, 72 N.E.3d 892, 898–99 (Ind. 2017) (cleaned up).

According to the text, Section 7(b)(3) creates a cause of action for a "commercial electronic mail message[s] that: . . . (3) *contains* false or misleading information in the subject line." (emphasis added). The grammatical subject of the verb "contains" is "that," which is a relative pronoun referring to "commercial electronic mail message." The "subject line" is not the grammatical subject of the sentence. In other words, Section 7(b)(3) puts the entire message at issue. On a plain reading of the statute, it creates a cause of action for false or misleading information in the subject line when considering the entire message as a whole. Ulta is correct on that point.

Ulta is also correct that considering the alleged messages here, Plaintiffs have failed to allege that any of the messages contained "false . . . information in the subject line." Dkt. 73 at 5. And as Ulta argues, "Plaintiffs never allege that Ulta failed to offer the gifts or percentage discounts referenced in the subject lines they attack, that qualifying conditions were concealed, or that any gift or discount was unavailable on its stated terms." Dkt. 35 at 7. Plaintiffs' only rejoinder is that the IDCEMA's plain terms make the message irrelevant, which

is an incorrect interpretation of the statute. Any claim based solely on an allegation of "false" information is **dismissed**, and Ulta's motion is **granted** in this respect.

While Plaintiffs have failed to allege that Ulta sent any messages that contained "false . . . information in the subject line," they have sufficiently alleged that Ulta sent messages containing "misleading information in the subject line." Nothing in the plain text of the IDCEMA suggests that the Court must read "false or misleading" as a grammatical unit with a single meaning rather than separate words with different meanings that afford two alternative bases for liability.

The term "mislead" at the time the IDCEMA was passed meant "to lead into error (of judgment); deceive or delude." *Turner v. Bd. of Aviation Comm'rs*, 743 N.E.2d 1153, 1162 (Ind. Ct. App. 2001) (quoting Webster's New World Dictionary 867 (3d College ed. 1998)). Another dictionary defines misleading as "delusive; calculated to be misunderstood." Black's Law Dictionary (7th ed. 1999) (current through 2003). These definitions are clearly broader than common law fraud or misrepresentation, but they necessarily assume an objective standard and a measure of reasonableness on the part of the person being misled. *Cf. Allen v. Great Am. Rsrv. Ins. Co.*, 766 N.E.2d 1157, 1164 (Ind. 2002) ("Indiana similarly requires reasonable reliance as an element of any recovery for alleged misrepresentation or failure to notify."). These definitions would not sweep in conduct premised on bare error or mere technical inaccuracies unless those inaccuracies induced an ordinary, reasonable person to make an "error of judgment."

On this definition, the complaint plausibly alleges that Ulta's emails contained "misleading information in the subject line." As Plaintiffs allege, the unqualified language of "free gift" or "discounts" within the subject lines "drive email opens and engagement," "entic[e] consumers to open the email in anticipation of a broad bargain," and "induc[e] interest in purchases." Dkt. 1-2 ¶¶ 7–9. Plaintiffs' fundamental contention is that opening these emails was an error of judgment on their part that was enticed and induced by Ulta's subject lines. This enticement and inducement would not have occurred, they allege, had the subject lines said something about the fine print. *Id.* ¶ 9. Whether any reasonable jury could find that Ulta's emails are misleading is a question for another day. It is enough at present to conclude that Plaintiffs have stated an IDCEMA claim for emails that contain misleading subject lines under Section 7(b)(3). Ulta's motion is **denied** in this respect.[2]

### C. Preemption

Ulta argues that even if Plaintiffs have stated a claim, IDCEMA Section 7(b)(3) is preempted by the CAN-SPAM Act's Preemption Clause. The Supremacy Clause of the United States Constitution provides that the Constitution and federal law are "the supreme Law of the Land." U.S. CONST. art. VI, cl. 2. State law that conflicts with federal law is "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (citing *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427

[2] Plaintiffs' complaint cites to various Federal Trade Commission Guidelines to support their allegations. Dkt. 1-2 ¶¶ 6, 10. The Court does not consider these references to be factual allegations. Plaintiffs' complaint could have omitted them. The Court did not take them into account in considering Ulta's motion.

(1819)). That said, under our federal system, the Court starts from "the basic assumption that Congress did not intend to displace state law." *Id.* Unless there is a "clear and manifest purpose of Congress," the police powers of the States are not superseded. *Medtronic Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

Preemption may be found along three avenues: (1) express preemption, where Congress "define[s] explicitly the extent to which its enactments pre-empt state law[;]" (2) field preemption, where state law is preempted because "it regulates conduct in a field that Congress intended the federal government to occupy exclusively[;]" and (3) conflict preemption, where compliance with both federal and state law is impossible or state law obstructs the accomplishment and execution of the full purposes and objectives of Congress. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 & n.5 (1990); *see also Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). However, the three preemption categories are not "rigidly distinct." *English*, 496 U.S. at 79 n.5.

**1. Express Preemption**

Ulta presents an express preemption argument based on the CAN-SPAM Act's Preemption Clause. That provision is worded as a broad preemption of any state law that regulates commercial email messages. But it also contains a Savings Clause. Here is the text for both:

> This chapter supersedes any statute, regulation, or rule of a State . . . that expressly regulates the use of electronic mail to send commercial messages, *except* to the extent that any such statute, regulation, or rule prohibits *falsity or deception* in any portion of a commercial electronic mail message or information attached thereto.

15 U.S.C. § 7707(b)(1) (emphasis added). The Act further specifies that "[t]his chapter shall not be construed to preempt the applicability of—(A) State laws that are not specific to electronic mail, including State trespass, contract, or tort law; or (B) other State laws to the extent that those laws relate to acts of fraud or computer crime." *Id.* at § 7707(b)(2).

This case turns on the meaning of Section 7707's Preemption Clause and Savings Clause. When interpreting a statute, the Court starts with the ordinary meaning of the text. *Montgomery v. Caribe Transport II, LLC*, 608 U.S. 219, 226 (2026). Where "the statutory language is unambiguous and 'the statutory scheme is coherent and consistent,'" a court cannot look further. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). Where an express preemption provision is found in a federal statute, courts will interpret the language of the provision using its ordinary meaning without inquiring about whether enforcement of a Preemption Clause or a Savings Clause may create oddities in a statutory scheme. *E.g.*, *Montgomery*, 608 U.S. at 229 ("Better to live with the mystery than to rewrite the statute."). "The text . . . controls." *Id.*; *see also Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (to establish preemption "a litigant must point specifically to 'a constitutional text or a federal statute' that does the displacing or conflicts with state law.").

By its plain terms, the CAN-SPAM Act's Preemption Clause applies to any state law that regulates "the use of electronic mail to send commercial

messages." 15 U.S.C. § 7707(b)(1). That includes causes of action under IDCEMA Section 7(b)(3).

But Plaintiffs argue that the Savings Clause of CAN-SPAM encompasses Section 7(b)(3) claims and excludes such claims from preemption. Because the Court has already concluded that Plaintiffs failed to state a claim for "false . . . information in the subject line," it considers only whether the Savings Clause saves IDCEMA claims for "misleading information in the subject line." Ind. Code § 24-5-22-7(b)(3). It does.

**a. "Subject lines" are "information attached" to an email under the Savings Clause**

As a preliminary matter, the Savings Clause applies only to "messages and information attached thereto." 15 U.S.C. § 7707(b)(1). A "subject line" is "attached" to a message. *Id.*

The Court assumes that Congress intended terms to have the same meaning throughout the statute. *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 456 (2012) (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994)) ("there is a presumption that a given term is used to mean the same thing throughout a statute[.]"). This goes for the term "attached." The CAN-SPAM Act says that "header information" is "attached" to a message. 15 U.S.C. § 7702(8) It defines "header information," as "the source, destination, and routing information *attached to an electronic mail message*, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message."

*Id.* (emphasis added). This definition does not expressly discuss a "subject line." But elsewhere in the CAN-SPAM Act, Congress expressly regulates the "subject heading of the message," making it unlawful for "any person" to send an email with knowledge "that a subject heading of the message would be likely to mislead a recipient . . . about a material fact regarding the contents or subject matter of the message." 15 U.S.C. § 7704(a)(2). The phrase "subject heading *of* the message" in 15 U.S.C. § 7704(a)(2) (emphasis added) necessarily means that the subject heading is attached to the message. The preposition "of" indicates a possessive relationship between "the message" and its "subject heading." This is the same kind of relationship a message has with its "header information," which is one of attachment. Therefore, the term "information attached thereto" in the Savings Clause includes subject lines.

**b. An IDCEMA Section 7(b)(3) claim for "false and misleading" subject lines "prohibits falsity or deception" in subject lines**

The Savings Clause's "falsity or deception" language also encompasses Plaintiffs' Section 7(b)(3) claim.

Congress did not expressly define "falsity" or "deception." So, the first step is to consider their ordinary meaning. *Montgomery*, 608 U.S. at 226; *Barnhart*, 534 U.S. at 450. The ordinary meaning of "falsity or deception in any portion of" a subject line of a commercial electronic mail message, 15 U.S.C. § 7707(b)(1), is indistinguishable from the meaning of "false or misleading information in the subject line." Ind. Code § 24-5-22-7(b)(3). Both statutes contain some form of the term "false." And as discussed above the ordinary meaning of "misleading" in the

Indiana statute is more than bare error or technical inaccuracies but has essentially the same meaning as "deception" in the Savings Clause. *Turner*, 743 N.E.2d at 1162 (noting definition of "mislead" as "to lead into error (of judgment); deceive or delude."). There is little reason to go any further to conclude that the Savings Clause encompasses Section 7(b)(3) of the IDCEMA.

Ulta argues against this conclusion and spends most of its briefing arguing that the Savings Clause "reaches only 'traditionally tortious or wrongful conduct,' not immaterial or technical errors, and requires that the alleged falsity be material and either intended or likely to mislead." Dkt. 73 at 9 (citations omitted). It argues the Savings Clause is limited to claims subject to "the heightened pleading standard applicable to claims sounding in fraud." Dkt. 35 at 14. Ulta and the cases it cites present several arguments in support, but the Court is not persuaded.

First, Ulta argues that by "[p]airing 'falsity' with 'deception,' . . . Congress was operating in the vein of tort when it drafted the pre-emption clause's exceptions." Dkt. 73 at 11 (quoting *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006) and citing *Gordon v. Virtumundo*, 575 F.3d 1040, 1062 (9th Cir. 2009)). In support, Ulta cites to the Fourth and Ninth Circuit decisions in *Omega* and *Gordon*, which invoked the cannon of construction *noscitur a sociis*, "a word is generally known by the company that it keeps." *Omega*, 469 F.3d at 354; *accord Gordon*, 575 F.3d at 1062. These courts concluded that by pairing "falsity" with "deception," "Congress was operating in the vein of tort when it drafted the pre-emption clause's exceptions,

and intended falsity to refer to other torts involving misrepresentations, rather than to sweep up errors that do not sound in tort." *Omega*, 469 F.3d at 354; *accord Gordon*, 575 F.3d at 1062.

Both Circuits also noted Congress's general purpose for enacting the CAN-SPAM Act was to "establish a national standard" for marketing emails that "left the individual states free to extend traditional tort theories." *Gordon*, 757 F.3d at 1063; *accord Omega*, 469 F.3d at 355. The Ninth Circuit also looked to Congress's express reference to "acts of fraud" in Section 7707(b)(2)(B) and the legislative history, which corroborated its traditional tort theories construction of the Savings Clause. *Gordon*, 575 F.3d at 1062 (quoting S. Rep. No. 108-102 (using "fraudulent" and "deceptive" in the same breath)).

The Court finds this approach unpersuasive. Principally, Ulta's argument fails to consider the ordinary meaning of the undefined terms "falsity" and "deception," which is always the first step of statutory construction. *Montgomery*, 608 U.S. at 226; *Barnhart*, 534 U.S. at 450.

Further, the Fourth and Ninth Circuit's interpretation does not adequately account for Congress's use of "tort law" or "acts of fraud" just a few lines after the Savings Clause in Section 7707. Specifically, 18 U.S.C. § 7707(b)(2)(B) states that "[t]his chapter shall not be construed to preempt the applicability of—(A) State laws that are not specific to electronic mail, including . . . *tort law*; or (B) other State laws to the extent that those laws relate to *acts of fraud* or computer crime." (emphasis added). This provision strongly suggests that whatever "falsity or deception" means in the Savings Clause, those terms encompass a class of

claims broader than claims that sound in fraud. If Congress had meant to restrict the Savings Clause only to traditional tort remedies that sound in fraud, it would have referenced "tort" or "fraud" in the actual Savings Clause rather than go on to expressly reference "tort law" or "acts of fraud" a few lines later in a separate sub-section. The better reading of the statute is to give the terms "falsity" and "deception" their ordinary, independent meaning rather than construe them together as shorthand for traditional common law claims. This construction has the added benefit of avoiding a reading that "falsity" and "deception" are redundant of "tort law" or "acts of fraud." *See Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012) (noting the "general reluctan[ce] to treat statutory terms as surplusage." (internal quotations omitted)).

Ulta cites other non-binding district court orders to support its position, including *Martin v. CCH, Inc.*, 784 F.Supp.2d 1000, 1006 (N.D. Ill. 2011); *see also* dkt. 73 at 8. The *Martin* court concluded that CAN-SPAM preempted claims based on merely "misleading" information because CAN-SPAM in Section 7704(a)(2) expressly "prohibits subject headings likely to mislead a recipient about a material fact regarding the contents of the message." *Martin*, 784 F.Supp.2d at 1007. Respectfully, the Court disagrees because Section 7704(a)(2) is not "[t]he relevant portion of the CAN-SPAM Act" for express preemption purposes as the *Martin* court found. *Id.* at 1003. The Preemption Clause and Savings Clause of Section 7707 are the relevant text for the express preemption inquiry. And as discussed above, the meaning of "misleading" under Indiana's

IDCEMA Section 7(b)(3) overlaps with the meaning of "deception" in the Savings Clause.

To be clear, the Court does not necessarily disagree with the outcomes reached by the Fourth and Ninth Circuits or the Northern District of Illinois. The Fourth Circuit addressed a recipient of commercial e-mail messages that alleged mere technical inaccuracies in the header information. *Omega*, 469 F.3d at 352. The Ninth Circuit addressed emails for which the sender's identity was unclear. *Gordon*, 575 F.3d at 1059. The *Martin* court, in turn, concluded that "two circuits have held that less than comprehensive information outside the body of an email is at best a technical allegation that finds no basis in traditional tort theories and thus falls within CAN[-]SPAM's express preemption clause (and outside the exception)." *Martin*, 784 F.Supp.2d at 1007 (citing *Gordon*, 575 F.3d at 1064; *Omega*, 469 F.3d at 354). The critical issue in Plaintiffs' case here is not so much whether the Savings Clause encompasses the bare error claims or incorrect sender information considered by the Fourth and Ninth Circuit and Northern District of Illinois. The alleged emails in Plaintiffs' complaint are patently more "misleading" than this and fall within the ordinary meaning of "deception" in the Savings Clause.

In sum, the CAN-SPAM Act's Savings Clause encompasses Plaintiffs' Section 7(b)(3) claim for misleading information in the subject lines. This claim is not preempted under the doctrine of express preemption because the Savings Clause is not limited to traditional tort claims that are subject to heightened pleading standards.

### c. IDCEMA conspiracy claims do not arise from a statute that "prohibits falsity or deception" in subject lines

The Cout does not reach the same conclusion, however, with respect to Plaintiffs' conspiracy claims. Plaintiffs allege that "Defendant has initiated (or conspired to initiate) the transmission of hundreds of commercial electronic mail messages with false or misleading subject lines." Dkt. 1-2 ¶ 29; *see also id.* ¶¶ 243, 249.b., 252. It is unclear what Plaintiffs' basis is for asserting these claims. The IDCEMA does not expressly create a cause of action for conspiracy, only "assist[ing] the transmission" of emails that otherwise violate the IDCEMA. Ind. Code § 24-5-22-7(c); *see also* Ind. Code § 24-5-22-10. It appears that Plaintiffs proceed under a theory of civil conspiracy.

"Civil conspiracy is a combination of two or more persons who engage in a concerted action to accomplish an unlawful purpose or to accomplish some lawful purpose by unlawful means." *Rosenbaum v. White*, 692 F.3d 593, 606 (7th Cir. 2012) (quoting *K.M.K. v. A.K.*, 908 N.E.2d 658, 663 (Ind. App. Ct. 2009)). "In Indiana, there is no independent cause of action for civil conspiracy." *Id.* "[A] plaintiff may sue for damages that result from such a conspiracy if he can demonstrate that the defendants acted in concert with another party in the commission of an independent tort." *Id.* Critically, civil conspiracy does not require completion of the unlawful act, only concerted action toward that end. *See id.*

The Savings Clause applies to "commercial electronic message[s]" not to attempted messages or any act short of sending them. It encompass state laws that address completed acts of sending emails in which there is "falsity or

deception in any portion" of the message or anything attached to it. Accordingly, Plaintiffs' conspiracy claim is preempted by CAN-SPAM and is **dismissed**.

**2. Conflict Preemption**

Ulta argues in the alternative that the CAN-SPAM Act preempts the IDCEMA under the doctrine of conflict preemption. Dkt. 35 at 19. Conflict preemption applies when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English*, 496 U.S. at 79 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

As a preliminary matter, the Court questions whether Ulta may argue conflict preemption for a federal statute that already includes an express preemption clause. While preemption is ultimately about identifying the "full purposes and objectives of Congress," *id.*, the "evidence of pre-emptive purpose is sought in the text and structure of the statute at issue." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). Here, the text of CAN-SPAM's Savings Clause, as construed by the Court today, does the heavy lifting and is the "relevant text" for the preemption inquiry. *Montgomery*, 608 U.S. at 226. As the Supreme Court has long noted, express and conflict preemption are not "rigidly distinct." *English*, 496 U.S. at 78–79 & n.5; *see also Virginia Uranium*, 587 U.S. at 767; *Montgomery*, 608 U.S. at 226 (limiting preemption analysis to meaning of express preemption provision and its savings clause). "If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transport*, 507

U.S. at 664; *but see Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000) (A savings clause "does *not* bar the ordinary working of conflict pre-emption principles.").

Even so, the Court finds no conflict between IDCEMA Section 7(b)(3) and CAN-SPAM.

First, Ulta argues that the IDCEMA requires knowledge of Indiana residency, and CAN-SPAM does not. Dkt. 35 at 20 (*comparing* Ind. Code § 24-5-22-7(c)(2) *with* 15 U.S.C. § 7704(a)(2)). But this overstates the meaning and effect of the IDCEMA. Ulta conflates Plaintiffs' burden to show such knowledge of residency as an element of its claim with a business's affirmative obligation to track this information regardless of whether it is sued. The IDCEMA imposes no such affirmative obligation on any business. The fact that Ulta may voluntarily assume this burden as a strategy to reduce its risk of litigation from Indiana residents does not create a conflict between Indiana law and federal law. The focal point of conflict preemption is not "abstract and unenacted legislative desires," but "evidence of preemptive purpose . . . in the text and structure of the statute at issue." *Virginia Uranium, Inc.*, 587 U.S. at 778 (quoting *CSX Transport*, 507 U.S. at 664).

To the extent the residency knowledge element of Section 7(b)(3) serves as an affirmative burden the IDCEMA imposes above and beyond CAN-SPAM, it is the kind of burden one would expect under the plain meaning of the Savings Clause, which allows states the freedom to continue enjoying laws that prohibit falsity and deception in emails and their attachments. It certainly is not an actual

conflict where "it is impossible for a private party to comply with both state and federal requirements." *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 303 (2019) (cleaned up). Nor does it create an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English*, 496 U.S. at 79. Ulta argues that it disrupts the "uniform standard" for marketing emails established by CAN-SPAM. Dkt. 73 at 12–14. But Ulta points to no standard within CAN-SPAM for regulating business's knowledge of the residency of who receives its emails. "[F]ederal law struck *no* balance in this area" that the IDCEMA disrupts. *Virginia Uranium, Inc.*, 587 U.S. at 791 (Ginsburg, J., concurring in the judgment).

Second, Ulta argues that the "IDCEMA punishes more than just sending emails," including "conspiring to send, or assisting in the transmission of a commercial email subject line," and CAN-SPAM does not. Dkt. 35 at 20–21 (*comparing* Ind. Code § 24-5-22-7 *with* 15 U.S.C. § 7704(a)(2)). It is unclear whether the IDCEMA actually creates a conspiracy claim or whether Plaintiffs' conspiracy claims arise from some other source. The Court need not decide because such claims, wherever they come from, clearly do not fall within the Savings Clause and are therefore preempted, as explained above.

Third and finally, Ulta argues that "CAN-SPAM targets deception about material facts," while the IDCEMA does not have a materiality requirement. Dkt. 35 at 20. Ulta references 15 U.S.C. § 7704(a)(2), which makes it unlawful for any person

> to initiate the transmission to a protected computer of a commercial electronic mail message if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

But this provision is consistent and is not in conflict with Section 7(b)(3) of the IDCEMA as Plaintiffs are seeking to enforce it. *Merck Sharp & Dohme Corp.*, 587 U.S. at 303.

It is an open question whether liability for "misleading information in the subject line" of Section 7(b)(3) of the IDCEMA imposes a materiality requirement (*i.e.*, is the subject line about a "material fact"). It likely does given that misleading is synonymous with deceptive, as discussed above. *Turner*, 743 N.E.2d at 1162. Assuming without deciding that a Section 7(b)(3) claim does include a materiality element, Plaintiffs' allegations plausibly satisfy it. As noted above, they allege that the subject line omitted material information about the conditions under which Ulta's products were free or discounted, and those emails enticed and induced Plaintiffs to open the emails. Dkt. 1-2 ¶¶ 7–9; *see also* dkt. 59 at 26–27. That is sufficient at this stage of litigation. It is premature to say more about what Plaintiffs must show on summary judgment or at trial under Indiana law.[3] Plaintiffs have sufficiently pled materiality and the Court

---

[3] At a later stage in these proceedings, if the parties dispute whether Section 7(b)(3) applies a materiality requirement, and if these issues become outcome determinative, the Court is inclined to certify these issues to the Indiana Supreme Court at the appropriate time. Ind. R. App. P. 64(A) ("[A]ny federal district court may certify a question of Indiana law to the Supreme Court when it appears to the federal court that a

cannot identify any conflict between CAN-SPAM and what Plaintiffs are seeking to enforce under Indiana law.

* * *

All said, Plaintiffs' conspiracy claim is preempted by CAN-SPAM. Ulta's motion is **granted** for that claim. But Plaintiffs' IDCEMA claim for misleading information in the subject line is not preempted. Ulta's motion is **denied** as to that claim.

### D. Dormant Commerce Clause

Ulta argues, last of all, that the IDCEMA is "implicitly preempted" by the Dormant Commerce Clause by regulating commerce beyond Indiana and burdening interstate commerce. Dkt. 35 at 21–23. The Court disagrees.

The Supreme Court's Dormant Commerce Clause jurisprudence prohibits states from discriminating between "in-state and out-of-state economic interests." *Lebamoff Enters., Inc. v. Rauner*, 909 F.3d 847, 851 (7th Cir. 2018) (quoting *Granholm v. Heald*, 544 U.S. 460, 472 (2005)). Facial discrimination is per se unconstitutional in almost every case. *Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495, 501 (7th Cir. 2017). State laws that do not expressly discriminate but have the effect of burdening out-of-state commerce are generally upheld unless they impose an "excessive" burden. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). "The fact that a state or municipal law affects interstate commerce in some way is by itself insufficient to render the law

---

proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent.").

suspect under the commerce clause, as almost any local regulation is bound to touch upon interstate commerce." *Regan v. City of Hammond, Indiana*, 934 F.3d 700, 702 (7th Cir. 2019).

The Dormant Commerce Clause also prohibits state regulation that "directly controls commerce occurring wholly outside" a state. *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336–37 (1989). The Supreme Court instructs courts to exercise "extreme caution" before invalidating statutes under the Dormant Commerce Clause. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 390 (2023).

Ulta attempts to argue facial discrimination by arguing that the IDCEMA's "residency-triggered liability forces out-of-state competitors to build out Indiana specific segmentation for interstate email campaigns, while retailers operating exclusively in Indiana can adopt IDCEMA as a default rule and avoid similar costs." Dkt. 35 at 21–22. As explained above, enforcement of Section 7(b)(3) imposes a burden on email recipients to prove that the sender knew it was sending emails to an Indiana resident. That particular provision imposes no segmentation requirement on any out-of-state retailer. A retailer's lack of knowledge of the residence of its email recipients is a defense to liability, and a significant limit to the reach of the IDCEMA's impact on out-of-state commerce. Further, as the State of Indiana argues, "there is no additional requirement placed on out-of-state businesses. Every requirement of the statute [also] expressly applies to in-state businesses." Dkt. 62 at 6.

Ulta argues that the IDCEMA controls commerce outside of Indiana, offering the hypothetical that Ulta could be liable for sending an email to an Indiana resident who receives it while she is attending college in Illinois. Dkt. 35 at 22. This argument fails for several reasons. First, Ulta concedes that extraterritorial effect is not a per se violation of the Dormant Commerce Clause. Dkt. 35 at 20 n.1 (citing *National Pork*, 598 U.S. at 376 n.1). Second, this argument is premature. Ulta has not identified any allegation in the complaint consistent with this hypothetical. Third, this hypothetical could arise under the very kind of traditional Indiana tort remedies that even Ulta concedes are expressly authorized by Congress under its interpretation of the Savings Clause. A state does not interfere or otherwise discriminate against interstate commerce by allowing litigants to bring state claims that are encompassed within the Savings Clause of a preemption provision.

Lastly, Ulta argues that the IDCEMA threatens the national uniformity envisioned by Congress when it passed CAN-SPAM by imposing an Indiana-specific burden on Ulta. Dkt. 35 at 23. But as explained above, Plaintiffs' Section 7(b)(3) claim falls within the CAN-SPAM Savings Clause that Congress enacted. Moreover, as explained above, there is no conflict between the Plaintiffs' claim and the CAN-SPAM Act. Even assuming without deciding that there is an out-of-state burden, Ulta has not demonstrated that it is "excessive." *Pike*, 397 U.S. at 142.

The Court **denies** Ulta's motion to dismiss on Dormant Commerce Clause grounds.

## V. CONCLUSION

Ulta's motion to dismiss is **GRANTED in part** and **DENIED in part**. Dkt. [34]. Plaintiffs fail to state a claim under the IDCEMA to the extent they seek to hold Ulta liable for emails that contain "false" information in the subject line. This claim is **DISMISSED without prejudice**. Plaintiffs' conspiracy claim is preempted by the CAN-SPAM Act's Preemption Clause. This claim is **DISMISSED with prejudice**. Plaintiffs' case shall proceed in all other respects.

**SO ORDERED.**

Date: 9/15/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All Counsel of Record via CM/ECF.